FILED

NOV 0 4 2016

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Rochelle Nishimoto, individually and as Successor in Interest to Jason Nishimoto,<br><br>                    Plaintiff,<br><br>v.<br><br>County of San Diego; Does 1-100,<br><br>                    Defendant. | Case No.: 3:16-cv-01974-BEN-JMA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |

Before this Court is Defendant County of San Diego's Motion to Dismiss Plaintiff Rochelle Nishimoto's Complaint. The motion is fully briefed. The Court finds the Motion suitable for determination on the papers without oral argument, pursuant to Civil Local Rule 7.1.d.1. For the reasons set for below, Defendant's motion is **GRANTED IN PART AND DENIED IN PART**.

///
///
///
///
///
///

1

3:16-cv-01974-BEN-JMA

## BACKGROUND[1]

Decedent Jason Nishimoto ("Jason") was a troubled man who was diagnosed with schizoaffective disorder when he was eighteen years old. At the time of his death, Jason was forty-four years old. Despite his diagnosis, Jason independently managed his medical care and held gainful employment. Prior to the subject incident, he had no criminal history, and had shown himself to be a high-functioning paranoid schizophrenic.

Approximately five months prior to his death, Jason became overwhelmed by the side effects of his medication. However, he continued to take his medication to control his paranoid delusions and the active hallucinations that accompanied his schizophrenia. On May 27, 2015, Jason had a conversation with his mother, Plaintiff and Successor in Interest Rochelle Nishimoto ("Rochelle"), which resulted in Rochelle taking Jason to Tri-City Medical Center ("Tri-City") to be placed in a 5150 Hold for his suicidal ideations. Jason's medical history showed he had a history of self-harm attempts, and Tri-City admitted him under a 5150 Hold "for danger to self and others."

On July 5, 2015, Jason attempted suicide by intentionally overdosing on one of his prescriptions. Jason then told Rochelle what he had done, and Rochelle and her other son, Adrian, called 911. Jason was taken to Tri-City and placed on another 5150 Hold for his suicidal ideations. While in Tri-City's care, Jason tried to hang himself, but psychiatric professionals intervened.

On August 19, 2015, Jason again attempted to commit suicide by overdosing on one of his medications. Rochelle immediately called 911, and Jason was taken back to Tri-City and admitted as a 5150 Hold for his suicidal ideations. This time, his commitment was extended to fourteen days.

---

[1] The following overview of the facts are drawn from the allegations of the Complaint. The Court is not making findings of fact. The allegations relevant to each motion are detailed in analyzing the individual motions.

1  On September 25, 2015, Jason made a third suicide attempt, again overdosing on
2  one of his medications.  This time, when Rochelle and Adrian attempted to intervene,
3  Jason was resistant, and there was a physical altercation between Jason and Adrian.
4  Adrian called 911, and when the sheriffs arrived, Adrian informed them of Jason's
5  schizophrenia and contemporaneous suicide attempt.  Adrian also advised the sheriffs of
6  Jason's history of mental illness and prior suicide attempts.

7  The sheriffs arrested Jason for assault despite Adrian's representation that he
8  would not press charges.  Jason was taken to Tri-City, who released him back to the
9  sheriff's custody less than an hour later.  Jason was then transported to the Vista
10  Detention Facility ("VDF").

11  Rochelle first learned that Jason was incarcerated at VDF the following day, when
12  she received a phone call from a VDF psychiatric nurse.  The nurse advised Rochelle that
13  she had attempted to evaluate Jason, but was unsuccessful because he was too disoriented
14  and could not answer her questions.  The nurse stated her belief that Jason was
15  schizophrenic, and requested information about his medications.

16  Rochelle informed the nurse of Jason's illness and medication needs, and that he
17  had several recent suicide attempts.  Rochelle also informed the nurse that Jason had
18  attempted suicide moments before he was arrested.  The nurse told Rochelle that she
19  would expedite his psychiatric evaluation to September 27, 2015, but did not think his
20  medication would be approved because it was too expensive.

21  While Jason was held at VDF, he did not receive his medications.  He was housed
22  in an "Ad-Seg" cell, which is not an observation or safety cell.  The day after Rochelle's
23  phone call with the VDF nurse, Jason was found hanging from an air vent with a noose
24  made from his bed sheet.

25  If Jason had been housed in a safety cell, he would have been monitored every 15-
26  30 minutes, and would have been monitored by a mental health professional at least
27  daily.  Additionally, safety cells do not contain fixtures, bedding, and clothing, which
28  serve to prevent opportunity and means for suicide attempts.

1  On August 5, 2016, Rochelle filed a Complaint, individually and as Jason's

2  Successor in Interest, against Defendant County of San Diego ("the County") and Does

3  1-100.  The Complaint alleges claims under 42 U.S.C. § 1983 and a claim for wrongful

4  death against the County.  (*See* Docket No. 1.)  The County now moves to dismiss all

5  claims against it, and to strike certain portions of the Complaint.  (*See* Docket No. 4-1.)

6  <center>**LEGAL STANDARD**</center>

7  Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint

8  if, taking all factual allegations as true, the complaint fails to state a plausible claim for

9  relief on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v.*

10  *Twombly*, 550 U.S. 544, 556-57 (2007).  Dismissal is appropriate if the complaint fails to

11  state enough facts to raise a reasonable expectation that discovery will reveal evidence of

12  the matter complained of, or if the complaint lacks a cognizable legal theory under which

13  relief may be granted.  *Twombly*, 550 U.S. at 556.  "A claim is facially plausible 'when

14  the plaintiff pleads factual content that allows the court to draw the reasonable inference

15  that the defendant is liable for the misconduct alleged.'"  *Zixiang Li v. Kerry*, 710 F.3d

16  995, 999 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).  "Threadbare recitals of the

17  elements of a cause of action, supported by mere conclusory statements, do not suffice."

18  *Iqbal*, 556 U.S. at 678.

19  <center>**DISCUSSSION**</center>

20  **I.    Plaintiff's Standing to Bring Survival Actions**

21  In the instant Motion, Defendant County of San Diego (hereinafter, "Defendant")

22  asserts Plaintiff Rochelle Nishimoto (hereinafter, "Plaintiff" or "Rochelle") lacks

23  standing to bring claims as the Successor in Interest for decedent Jason Nishimoto

24  (hereinafter, "Jason") on the grounds that her declaration is factually insufficient.  (*See*

25  Docket No. 4-1, Mot. to Dismiss at 10:21-12:27.)  Specifically, Defendant alleges

26  Rochelle failed to include facts to support her assertion that she is Jason's Successor in

27  Interest.  (*Id.*)  In other words, Defendant challenges Rochelle's standing to bring a

28  survival action on behalf of Jason's estate.

<center>4</center>

1    A survival action is an action by a decedent's estate to recover damages on behalf

2    of the decedent for injuries the decedent sustained. *Hayes v. County of San Diego*, 736 F.

3    3d 1223, 1228-1229 (9th Cir. 2013) (citing *Davis v. Bender Shipbuilding & Repair Co.*,

4    27 F.3d 426, 429 (9th Cir. 1994).) A party seeking to bring a survival action in a federal

5    court "bears the burden of demonstrating that a particular state's law authorizes a survival

6    action and that the plaintiff meets that state's requirements for bringing a survival

7    action." *Id.* (quoting *Moreland v. Las Vegas Metro Police Dep't*, 159 F.3d 365, 369 (9th

8    Cir. 1998) (internal citations omitted)).

9    In California, a survival action may be commenced by the decedent's personal

10   representative or, if none, by the decedent's successor in interest. *See* Cal. Code Civ.

11   Proc. § 377.30; *see also Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1093 n.

12   2 (9th Cir. 2006) ("Where there is no personal representative for the estate, the decedent's

13   'successor in interest' may prosecute the survival action if the person purporting to act as

14   successor in interest satisfies the requirements of California law. . .") (citing Cal. Code

15   Civ. Proc. §§ 377.30, 377.32). A person who seeks to commence an action or proceeding

16   as a decedent's successor in interest must execute and file an affidavit or declaration

17   under penalty of perjury under the laws of the State of California stating all of the

18   following:

19                (1) Decedent's name.
20                (2) The date and place of decedent's death.
21                (3) "No proceeding is now pending in California for
                     administration of the decedent's estate."
22                (4) If the decedent's estate was administered, a copy of the final
                     order showing the distribution of the decedent's cause of
23                   action to the successor in interest.
24                (5) Either of the following, as appropriate, with facts in support
                     thereof:
25                (A) "The affiant or declarant is the decedent's successor in
                     interest (as defined by Section 377.11 of the California Code
26                   of Civil Procedure) and succeeds to the decedent's interest in
27                   the action or proceeding."
28

3:16-cv-01974-BEN-JMA

1             (B) "The affiant or declarant is authorized to act on behalf of the
2                  decedent's successor in interest (as defined by Section 377.11
                  of the California Code of Civil Procedure) with respect to the

(B) "The affiant or declarant is authorized to act on behalf of the decedent's successor in interest (as defined by Section 377.11 of the California Code of Civil Procedure) with respect to the decedent's interest in the action or proceeding."

(6) "No other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the pending action or proceeding."

(7) "The affiant or declarant affirms or declares under penalty of perjury under the laws of the State of California that the foregoing is true and correct."

*See* Cal. Code Civ. Proc. § 377.32(a).

In *Hayes*, the Ninth Circuit found the district court erred in finding that the plaintiff, Chelsey Hayes, had met California's statutory requirements to bring a survival action under Section 1983 because she failed to allege she was the decedent's personal representative or successor in interest. *Hayes*, 736 F.3d at 1229. The court found it insufficient that Hayes had alleged she was the decedent's "sole surviving heir." *Id.* Additionally, the court noted there was no indication from the record whether Hayes had "filed the affidavit necessary under California law to commence a survival action as decedent's successor in interest," and ultimately remanded determination of the issue of Hayes's standing to the district court. *Id.*

Here, Defendant acknowledges that Rochelle attached her declaration to the Complaint, in which she declared the following under penalty of perjury under the laws of the State of California:

1) Rochelle Nishimoto is the decedent, Jason Nishimoto's, mother. Jason Nishimoto was found dead at Vista Detention facility on August 27, 2015.
2) No proceeding is now pending in California for administration of Jason Nishimoto's estate.
3) Rochelle is Jason Nishimoto's Successor in Interest and succeed [sic] his interest in this action pursuant to California Code of Civil Procedure §§ 377.01, 377.11, and California Probate Code § 6402.
4) No other person has a superior right to commence the action to be substituted for the decedent in the pending action;

6

5) Attached as Exhibit 1 is a true and correct copy of the death certificate of Jason Nishimoto.

(*See* Docket No. 1-1, Decl. of Rochelle Nishimoto, attached as Ex. 1 to the Compl.). Additionally, in the Complaint, Rochelle alleges she is Jason's Successor in Interest, being Jason's mother and sole heir. (Docket No. 1, Compl. ¶ 11.)

As stated above, in reviewing a motion to dismiss, a court takes all factual allegations as true; dismissal is appropriate only if the complaint fails to state enough facts to raise a reasonable expectation that discovery will reveal evidence of the matter complained of, or if the complaint lacks a cognizable legal theory under which relief may be granted. *See Twombly, supra*, 550 U.S. at 556. Contrary to Defendant's assertions, the Court finds Plaintiff has pled sufficient facts to meet her initial burden of establishing she has standing to bring claims against Defendant as Jason's Successor in Interest[2]. Defendant is not prevented from challenging Plaintiff's standing at the summary judgment stage, and Plaintiff may supplement her declaration to set forth additional facts to support her designation as Jason's Successor in Interest.

Having determined Plaintiff has sufficiently alleged facts to establish she has standing to bring claims as Jason's Successor in Interest, the Court address's the merits of Defendant's Motion to Dismiss the Second, Third, Fourth and Seventh Claims for Relief for failure to state a claim[3].

## II.   Plaintiff's Section 1983 Claims

Defendant argues Plaintiff failed to state facts to assert any viable municipal civil rights claims against it. In order to state a claim for a municipal civil rights violation, a

---

[2] The Court based its finding on the facts set forth in the Complaint and its review of Plaintiff's declaration attached to the Complaint. The Court recognizes Plaintiff's declaration may contain some inconsistencies and grammatical errors, but does not find these potential typographical errors warrant finding Plaintiff lacks standing in light of the substance of the declaration.

[3] The Court's analysis of the allegations of the claims and allegations of the Complaint are limited to the moving defendant. The Court's analysis of the Motion does not address and should not be interpreted to apply to any of the other Doe defendants.

3:16-cv-01974-BEN-JMA

1   plaintiff must allege that an "action pursuant to official municipal policy" caused her

2   injury. *Connick v. Thompson*, 56 U.S. 51, 60-61 (2011) (quoting *Monell v. New York*

3   *City Fire Dept. of Social Servs.*, 436 U.S. 654, 691 (1978)). "Official municipal policy

4   includes the decisions of the government's lawmakers, the acts of its policymaking

5   officials, and practices so persistent and widespread as to have the force of law." *Id.* at

6   61 (citations omitted.) To satisfy Section 1983, a claim that a municipality failed to train

7   its employees in a relevant respect must amount to "deliberate indifference to the rights

8   of the person with whom the [untrained employee] come into contact." *Id.*

9        "Deliberate indifference" is characterized as a "stringent standard of fault requiring

10  proof that a municipal actor disregarded a known or obvious consequence of his action."

11  *Connick*, 56 U.S. at 61 (quoting *Board of Comm'rs of Bryan Cnty. V. Brown*, 520 U.S.

12  397, 407 (1997)). For example, a city may be deemed deliberately indifferent if its

13  policymakers choose to retain a program which they have actual or constructive notice

14  that one of their training programs causes city employees to violate citizens'

15  constitutional rights. *See id.* (quoting *Bryan Cnty*, 520 U.S. at 407.) On the other hand, a

16  "city's 'policy of inaction' in light of notice that its program will cause constitutional

17  violations 'is the functional equivalent' of a decision by the city itself to violate the

18  Constitution." *Id.* at 61-62 (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).

19        **a. Second Claim for Relief**

20        In the Second Claim for Relief, Plaintiff asserts a claim as Jason's Successor in

21  Interest under 42 U.S.C. Section 1983, alleging Defendant's employees violated Jason's

22  Fourteenth Amendment right to adequate medical care, which resulted in his death.

23        Defendant appears to assert Plaintiff has failed to state a claim for the Second

24  Claim for Relief because, under *Taylor v. Barkes*, 135 S. Ct. 2042 (2015), Plaintiff does

25  not have a constitutional right to implementation of particularized suicide prevention

26

27

28

1   measures[4]. (Mot. to Dismiss at 7:21-13.) As quoted by Defendant, the *Taylor* court

2   stated: "No decision of this Court establishes a right to the proper implementation of

3   adequate suicide prevention protocols.  No decision of this Court even discusses suicide

4   screening or prevention protocols." *Taylor*, 135 S. Ct. at 2044.  However, the *Taylor*

5   court reversed the lower courts' finding that adequate suicide prevention protocols was a

6   "clearly established" Eighth Amendment right "*at the time* of the Barkes's death." *Id.*

7   (emphasis added.)  Thus, the Supreme Court's discussion of its own jurisprudence

8   regarding the right to adequate suicide prevention protocols provided support that, *at the*

9   *time* of Barkes's death, there was no such right. *See id.*

10          In contrast, Plaintiff's Complaint alleges Defendant violated Jason's right to

11   adequate treatment of his serous medical needs by engaging in a custom and practice of

12   failing to adhere its own suicide prevention policy and/or that the same suicide

13   prevention policy was inadequate, which constituted deliberate indifference, and resulted

14   in Jason's death. (Docket No. 1, Compl. ¶¶ 54-76.)  Additionally, Plaintiff alleges the

15   inadequacy of those policies have failed to address the serious problem of prisoner

16   suicides. (Id. at ¶ 70.)  The Ninth Circuit has recognized that suicidal ideations constitute

17   a serious medical need and that inmates have a Constitutional right to adequate treatment

18   of serious medical needs. *Simmons*, *supra*, 609 F.3d at 1017; *Conn v. City of Reno*, 591

19   F.3d 1081, 1094–95 (9th Cir. 2009) (vacated on other grounds but partially reinstated by

20   658 F.3d 897 (9th Cir. 2011)).  Thus, inasmuch as Defendant argues Plaintiff's

21   Complaint failed to allege facts to assert violation of a Constitutional right, the Court

22   disagrees.

23          Defendant also argues that the Court should grant its Motion because Plaintiff did

24   not "factually allege what specific prevention measures are constitutionally required, and

25

26

_____

27   [4] Defendant's Memorandum of Points and Authorities and Reply in Support of its Motion to Dismiss did
     not clearly distinguish in its discussion of how Plaintiff failed to state claims for the Second, Third and
28   Fourth Claims for Relief.

1    the absence of which makes the policies inadequate." (*Id.* at 8:15-17.)  The argument that

2    Plaintiff failed to allege which specific suicide prevention measures are "constitutionally

3    required" to support her claim contradicts Defendant's assertion and reference to *Taylor*,

4    which established that there is no clearly established law that provides a Constitutional

5    right to adequate suicide prevention policies.  *Taylor*, 135 S. Ct. at 2044.  On the other

6    hand, allegations of what makes the suicide prevention policies inadequate goes to

7    whether Jason received adequate medical care for his serious medical needs, and as

8    discussed above, the Court finds Plaintiff has sufficiently stated facts to state this claim.

9          Defendant's Motion to Dismiss the Second Claim for Relief is therefore **DENIED**.

10         **b.  Third Claim for Relief**

11         In the Third Claim for Relief, Plaintiff asserts a claim as Jason's Successor in

12   Interest under 42 U.S.C. Section 1983, alleging Defendant violated Jason's Fourteenth

13   Amendment right to adequate medical care by engaging in a custom and practice of

14   failing to adequately train its employees in identifying, evaluating, and treating suicidal

15   inmates during their incarceration, which resulted in Jason's death.

16         When bringing a Section 1983 failure to train claim, "[a] pattern of similar

17   constitutional violations is 'ordinarily necessary' to demonstrate deliberate indifference."

18   *Connick, supra*, 56 U.S. at 62 (citing *Bryan Cnty., supra*, 520 U.S. at 409).  Contrary to

19   Defendant's assertions, neither the *Canton* nor the *Connick* courts required "findings" of

20   similar constitutional violations to establish municipal liability for a deliberately

21   indifferent custom or program.  (Docket No. 4-1 at 6:2-4.)

22         First, the *Canton* court did not squarely address what constituted a pattern of

23   similar constitutional violations[5]; instead, it considered whether inadequacy of police

24   training may serve as a basis for a Section 1983 claim against a municipality.  *See*

25

26   _____

27   [5] In its Memorandum of Points and Authorities in Support of its Motion to Dismiss, Defendant cited to
     pages of *Canton* that do not appear to be a part of *Canton's* opinion.  Additionally, Defendant's Reply

28   brief cited to a quote from Justice O'Conner's concurring opinion, which to be clear may be persuasive
     but is not binding on this Court.  (Docket No. 6, Reply at 2:10-13.)

1   *Canton*, *supra*, 489 U.S. at 380.  ("In this case, we are asked to determine if a

2   municipality can ever be liable under 42 U.S.C. § 1983 for constitutional violations from

3   its failure to train municipal employees.")

4   Second, in *Connick*, the Court found that four reversals due to *Brady* violations

5   over a ten year period prior to respondent's armed robbery trial could not have put the

6   county district attorney or the county district attorney's office on notice that their *Brady*

7   training was inadequate with respect to the type of *Brady* violation committed against

8   respondent.  *Connick*, *supra*, 563 U.S. 62-63.  The Court noted that, unlike the *Brady*

9   violation committed against respondent, none of the four reversals involved failure to

10  disclose blood evidence, a crime lab report, or physical or scientific evidence of any kind.

11  *See id.* at 54-57, 62-63.  Further, the Court stated: "[b]ecause those *incidents* are not

12  similar to the violation at issue here, they could not have put Connick on notice that

13  specific training was necessary to avoid this constitutional violation."  *Id.* at 63 (emphasis

14  added.)  The Court also stated that respondent had "every incentive at trial to establish a

15  pattern of similar violations, given that the jury instruction allowed the jury to find

16  deliberate indifference based on, among other things, *prosecutors' 'history of*

17  *mishandling' similar situations*."  *Id.* at 63 n. 7 (internal citation omitted) (emphasis

18  added).

19  In short, this Court is not persuaded that Plaintiff was required to allege the

20  existence of specific verdicts against Defendant for constitutional violations in order to

21  maintain her action.  Nevertheless, although the Court disagrees with Defendant's

22  analysis that *Canton* and *Connick* require Plaintiff allege a pattern of "findings" of

23  similar constitutional violations, the Court finds Plaintiff has failed to allege facts of a

24  pattern of *similar* constitutional violations.

25  Plaintiff's Complaint alleges that a U.S. Bureau of Justice Statistics study and a

26  local news publication stated that "San Diego has the highest suicide rate among the

27  state's largest jail systems."  (Docket No. 1, Compl. ¶ 9.)  The Complaint also generally

28  alleges "VDF medical staff were not sufficiently trained to identify, diagnose, address,

and treat suicidal inmates." (*Id.* at ¶ 83.)  The Complaint does not allege *specific* facts surrounding the nature or method of the other suicides, or whether the suicides occurred at the VDF.  Plaintiff also did not identify other circumstances similar to Jason's, and has thus failed to state facts to state a claim for failure to train under Section 1983.  Applying the reasoning in *Connick*, the Court finds Plaintiff is required to allege a pattern of similar constitutional violations with some specificity (i.e. that Defendant was aware of other suicides occurring under the similar circumstances as Jason's suicide).  *See Connick, supra*, 563 U.S. 62-63 (finding respondent failed to establish a pattern of similar constitutional violations because the alleged similar *Brady* violations were not similar to the Brady violation committed against respondent).

Therefore, the Court **GRANTS** Defendant's Motion to Dismiss the Third Claim for Relief, with leave to amend.

### c.  Fourth Claim for Relief

In the Fourth Claim for Relief, Plaintiff asserts an individual claim against Defendant under 42 U.S.C. Section 1983, alleging deprivation of a familial relationship in violation the Fourteenth Amendment.  Defendant's Motion generally alleges Plaintiff has failed to state facts sufficient to state a claim for the Fourth Claim for Relief.  (Docket No. 4-1, Mot. to Dismiss at 10:1-3, 14:17-18.)  However, Defendant's Motion does not provide authority or even discuss how Plaintiff has failed to allege sufficient facts to state a claim for deprivation of familial relationship.  Plaintiff's claim is plausible and the Court **DENIES** Defendant's Motion to Dismiss the Fourth Claim for Relief.

### III.   Seventh Claim for Relief

In the Seventh Claim for Relief, Plaintiff asserts a wrongful death claim against Defendant individually, and as Jason's Successor in Interest, for Jason's death. Defendant argues the Court should dismiss this claim for relief because it is immune from suit for Jason's alleged wrongful death pursuant to California Government Code § 844.6. (Docket No. 4-1, Mot. to Dismiss at 10:4-20.)  Plaintiff argues that Defendant is not entitled to immunity under California Government Code § 845.6, which provides an

1    exception to a public entity's immunity under Section 844.6.  (*See* Docket No. 5, Opp'n

2    at 16:23-17:22).

3         Under Section 844.6, a public entity is not liable for an injury proximately caused

4    by any prisoner, or an injury to any prisoner.  Cal. Gov't Code § 844.6(a)(1)-(2).

5    However, as pointed out by Plaintiff, Section 844.6's protection is not absolute, and is

6    subject to several exceptions, including Section 845.6.  *See* Cal. Gov't Code § 844.6(a)

7    ("Notwithstanding any other provision of this part, except as provided in this section and

8    in Sections 814, 814.2, 845.4, and 845.6, or in Title 2.1 (commencing with Section 3500)

9    of Part 3 of the Penal Code, a public entity is not liable for" injuries caused by, or to, any

10   prisoner)).

11        Section 845.6 provides, in relevant part:

12             Neither a public entity nor a public employee is liable for injury
13             proximately caused by the failure of the employee to furnish or
               obtain medical care for a prisoner in his custody; but, except as
14             otherwise  provided  by  Sections  855.8  and  856,  a  public
15             employee, and the public entity where the employee is acting
               within  the  scope  of  his  employment,  is  liable  if  the  employee
16             knows  or  has  reason  to  know  that  the  prisoner  is  in  need  of
17             immediate  medical  care  and  he  fails  to  take  reasonable  action  to
               summon such medical care.
18

19   Cal. Gov't Code § 845.6.  Thus, a public employee, and the public entity where the

20   employee is acting within the scope of his employment, may be liable for injury for

21   failing to reasonably summon medical care to a prisoner the employee knows, or should

22   have known was in need of immediate medical care.  *Id.*; *see also Jett v. Penner*, 439

23   F.3d 1091, 1098-1099 (9th Cir. 2006).

24        As referenced above, Section 845.6 is subject to the exceptions in Sections 855.8

25   and 856.  Cal. Gov't Code § 845.6.  Relevant to the instant case, Section 855.8(a)

26   provides that a public entity and a public employee are not liable for injury resulting from

27   diagnosing or failing to diagnose a mental illness, or from failing to prescribe for mental

28   illness.  Cal. Gov't Code § 855.8(a).  However, under Section 855.8(c) "[n]othing in this

3:16-cv-01974-BEN-JMA

1   section exonerates a public employee who has undertaken to prescribe for mental illness .
2   . . from liability for injury proximately caused by his negligence or by his wrongful act in
3   so prescribing." Cal. Gov't Code § 855.8(c). Additionally, under Section 855.8(d):
4   "[n]othing in this section exonerates a public employee from liability for injury
5   proximately caused by his negligent or wrongful act or omission in administering any
6   treatment prescribed for mental illness or addiction." Cal. Gov't Code § 855.8(d).

7        Section 845.6 removes government immunity for the act of failing to reasonably
8   *summon* medical care by a public employee who knows, or should have known of a
9   prisoner's *immediate* medical care. Cal. Gov't Code § 845.6.; *see also Jett*, *supra*, 439
10  F.3d at 1098-1099. Plaintiff's Complaint sets forth facts alleging Jason developed a need
11  for immediate medical care, and alleging Defendant failed to reasonably summon
12  medical care for that need.

13       Moreover, the Court finds Plaintiff has sufficiently pled facts to state a claim under
14  Section 855.8, which provides a basis for liability by a public entity, and the public
15  employee acting within the scope of him employment, for negligently prescribing and/or
16  administering treatment for a mental illness. Cal. Gov't Code § 855.8(c)-(d). Plaintiff
17  alleged that one of Defendant's employees, a nurse at VDF, called Plaintiff to ask about
18  Jason's medications because Jason was too disoriented to answer her questions. (Docket
19  No. 1, Compl. ¶ 31.) During this call, Plaintiff advised the nurse of Jason's illness and
20  medical needs, including that he had made several suicide attempts, the most recent being
21  in the moments before his arrest. (*Id.* at ¶¶ 31-32.) The nurse advised Plaintiff that she
22  would expedite Jason's psychiatric evaluation, but that she did not think his medication
23  would be approved due to the cost. (*Id.* ¶ 33.) Jason allegedly did not receive his
24  medications while incarcerated at VDF. (*Id.*)

25       Defendant's employees did not place Jason in an observation or safety cell. (*Id.*)
26  If Jason had been placed in a safety cell, he would probably have been monitored every
27  fifteen to thirty minutes, and would have been evaluated by a mental health professional
28  at least daily. (*Id.* at ¶ 35.) Further, safety cells are free from fixtures, bedding, and

3:16-cv-01974-BEN-JMA

1   clothing, which serve to prevent the opportunity and means for committing suicide in the

2   manner Jason did. (*Id.*) Jason committed suicide at Defendant's facility by using his bed

3   sheet to hang himself from an air vent in his cell. (*Id.* ¶¶ 33-34.) The facts in the

4   Complaint remain to be proven, but allege Defendant's employees undertook to prescribe

5   and/or treat Jason for his mental illness, and that his death is attributable to the

6   employees' negligence in prescribing for his mental illness and/or administering

7   treatment for mental illness. (*Id.* ¶¶ 27-42.)

8       Therefore, the Court finds Plaintiff has plead sufficient facts to state a claim for

9   wrongful death by Defendant and **DENIES** Defendant's Motion to Dismiss the Seventh

10  Claim for Relief.

11  **IV.    Defendant's Motion to Strike**

12      Under FRCP 12(f), a district court may strike from any pleading "any redundant,

13  immaterial, impertinent, or scandalous matter." *Whittlestone, Inc. v. Handi-Craft Co.,*

14  618 F.3d 970, 973 (9th Cir. 2010) (citing *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527

15  (9th Cir.1993) (quotation marks, citation, and first alteration omitted), *rev'd on other*

16  *grounds by Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455

17  (1994). A 12(f) motion to strike serves to "avoid the expenditure of time and money that

18  must arise from litigating spurious issues by dispensing with those issues prior to trial...."

19  *Id.* However, "motions to strike pursuant to Rule 12(f) are disfavored." *Miles v. Nat'l*

20  *Union Fire Ins. Co. of Pittsburgh, PA*, No. 08CV1195, 2009 WL 4795826, at *6 (S.D.

21  Cal. Dec. 8, 2009) (quoting *Estate of Migliaccio v. Midland Nat'l Life Ins. Co.,* 436

22  F.Supp.2d 1095, 1100 (C.D. Cal. 2006). When a court considers a motion to strike, it

23  "must view the pleading in a light most favorable to the pleading party." *In re*

24  *2TheMart.com, Inc. Sec Lit.*, 114 F.Supp.2d 955, 965 (C.D. Cal. 2000). Courts will deny

25  the motion if there is any doubt as to whether the allegations might be an issue in the

26  actions. *Id.*

27      "'Immaterial' matter is that which has no essential or important relationship to the

28  claim for relief or the defenses being pleaded. . . 'Impertinent' matter consists of

1   statements that do not pertain, and are not necessary, to the issues in question." *Fogerty,*
2   984 F.2d at 1527 (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* §
3   1382, at 706-07, 711 (1990)). "Redundant" allegations are unnecessarily repetitive or
4   wholly foreign to the issues involved in the action." *Cal. Dep't of Toxic Substances*
5   *Control v. Alco Pac., Inc.,* 217 F.Supp.2d 1028, 1033 (C.D. Cal. 2002). "Scandalous"
6   allegations include those "that cast a cruelly derogatory light on a party or other person."
7   *In re 2TheMart.com,* 114 F.Supp.2d at 965.

8        Defendant moves to strike from the Complaint paragraphs 9, 70, 71, 79, and 87.
9   (Docket No. 4-1, Mot. to Dismiss at 14:18-20.) Paragraphs 9 and 70 reference
10  information about an alleged pattern of suicides in the San Diego County jails that is
11  allegedly greater than any other California jail system taken from a City Beat newspaper
12  article. (*Id.* at 13:27-14:2.) Defendant does not argue that these references are redundant,
13  immaterial, impertinent, or scandalous, but instead suggests they should be stricken as
14  inadmissible hearsay. (*Id.* at 14:2-15.) Additionally, it appears to the Court that the
15  references to the pattern of suicides in the San Diego County jails and the comparison to
16  the suicide rates of other California jail systems raises an element of doubt as to whether
17  the allegations might be an issue in this action[6].

18       Defendant also moves to strike paragraphs 71, 79, and 87 of the Complaint as
19  immaterial and impertinent matter because they consist of legal argument and case
20  citations. (Docket No. 4-1, Mot. to Dismiss at 13:11-26.) However, Defendant admits
21  that the legal arguments and case citations are related to the claims set forth in Plaintiff's
22  Complaint. (Docket No. 4-1, Mot. to Dismiss at 13:21-22.) They will not be stricken.
23  *Fogerty,* 984 F.2d at 1527 (quoting 5 C. Wright & A. Miller, *Federal Practice and*
24  *Procedure* § 1382, at 706-07, 711 (1990)).

25
26
27
28  [6] The Court takes no position as to the veracity or the authenticity of the information in the newspaper
article, only that such allegations, if proven, may be at issue in the present case.

1    Defendant has failed to demonstrate that paragraphs 9, 70, 71, 79, and 87 are

2  redundant, immaterial, impertinent, or scandalous.  The Court **DENIES** its Motion to

3  Strike.

4                                  **CONCLUSION**

5    For the reasons stated above, the Court **GRANTS** Defendant's Motion to Dismiss

6  the Third Claim for Relief, and **DENIES** Defendant's Motion to Dismiss the Second,

7  Fourth and Seventh Claims for Relief.  The Court also DENIES Defendant's Motion to

8  Strike paragraphs 9, 70, 71, 79, and 87 of the Complaint.  Plaintiff may file an amended

9  complaint within twenty (21) days of this Order.

10   **IT IS SO ORDERED.**

11

12  DATED: November 0⁄, 2016

13                                    HON. ROGER T. BENITEZ
                                      United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28