1  Christopher S. Morris, Esq., SBN 163188
   cmorris@morrislawfirmapc.com
2  Danielle R. Pena, Esq., SBN 286002
   dpena@morrislawfirmapc.com
3  MORRIS LAW FIRM, APC
   501 West Broadway, Suite 1480
4  San Diego, CA 92101
   Telephone:  (619) 826-8060
5  Facsimile:  (619) 826-8065

6  Attorneys for Plaintiff

7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11  ROCHELLE NISHIMOTO,                Case No. 16-cv-1974 BEN LL
    individually and as Successor in
12  Interest to JASON NISHIMOTO,       **MEMORANDUM OF POINTS AND
                                       AUTHORITIES IN SUPPORT OF
13                     Plaintiffs,     MOTION FOR:**

14      v.                             1.  **RECONSIDERATION
                                           PURSUANT TO FRCP60(B)(2);**
15  COUNTY OF SAN DIEGO; and           2.  **LEAVE TO ADD THREE CPMG
    DOES 1-100, inclusive,                 OFFICIALS; AND**
16                                     3.  **LEAVE TO CONTINUE
                       Defendants.         DISCOVERY ON A LIMITED
17                                         ISSUE**

18                                     Date:     February 11, 2019
                                       Time:     10:30 a.m.
19                                     Room:     5A
                                       Judge:    Hon. Robert T. Benitez
20

21

22

23

24

25

26

27

28

MOTION FOR RECONSIDERATION                    CASE NO.  16-cv-1974 BEN LL

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................5

II. STANDARD OF REVIEW ................................................................6

III. NEW EVIDENCE SHOWS CPMG INTENTIONALLY FAILED TO TRAIN ITS PROVIDERS IN SUICIDE PREVENTION.........................................7

    A.    Newly Discovered Evidence – The Emails ....................................7

    B.    The Emails Create Material Disputes and Would Defeat Any Dispositive Motion ..................................................................................7

    C.    Plaintiff was Reasonably Diligent in Not Discovering the Emails ............10

IV. JUSTICE REQUIRES DR. MANNIS, DR. RAO, AND DR. BADRE BE ADDED AS DEFENDANTS .................................................................13

V. GOOD CAUSE EXISTS TO GRANT ADDITIONAL DISCOVERY .............14

VI. CONCLUSION ...............................................................................15

MOTION FOR RECONSIDERATION          CASE NO.  16-cv-1974 BEN LL

# TABLE OF AUTHORITIES

## CASES

*Avila v. Willits Envtl. Remediation Trust*

   633 F.3d 828 (9th Cir. 2011) ................................................................. 14

*Coastal Transfer Co. v. Toyota Motor Sales*

   833 F.2d 208 (9th Cir. 1987) ..................................................................... 7

*Connick v. Thompson*

   563 U.S. 51 (2011) ................................................................................... 10

*Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*

   2006 U.S. Dist. LEXIS 94421 (E.D. Cal. Dec. 15, 2006) ....................... 13

*Hunt v. County of Orange*

   672 F.3d 606 (9th Cir. 2012) ................................................................... 14

*Imagenetix, Inc. v. GNC Holdings, Inc.*

   2013 U.S. Dist. LEXIS 193954, *13 .......................................................... 7

*Johnson v. Mammoth Recreations, Inc.*

   975 F.2d 604 (9th Cir. 1992) ............................................................. 13, 14

*Jones v. Frazesn*

   2010 U.S. Dist. LEXIS 36731, *11 ............................................................. 6

*Macias v. City of Clovis*

   2016 U.S. Dist. LEXIS 38964, *7 ............................................................. 13

*Stucky v. Haw. Dep't of Educ.*, 2008 U.S. Dist. LEXIS 37009 ........................ 6, 7

*Tagupa v. Vipdesk*, *Inc.*

   2016 U.S. Dist. LEXIS 7617, *6 ................................................................. 7

*Youngevity Int'l, Corp. v. Smith*

   2017 U.S. Dist. LEXIS 213485, *10 ........................................................ 15

**RULES**

Federal Rule of Civil Procedure, Rule 15 .............................................................. 13

Federal Rule of Civil Procedure, Rule 60 ................................................................ 6

Federal Rules of Civil Procedure, Rule 15(a) ...................................................... 13

Federal Rules of Civil Procedure, Rule 16 ..................................................... 13, 14

Federal Rules of Civil Procedure, Rule 16(b) ................................................ 13, 14

Federal Rules of Civil Procedure, Rule 16(d) ...................................................... 14

Federal Rules of Civil Procedure, Rule 60(b)(2) ............................................ 5, 6, 7

MOTION FOR RECONSIDERATION                    CASE NO.  16-cv-1974 BEN LL

# I.

## __INTRODUCTION__

On November 16, 2018, this Court issued an Order [Dkt. #100] dismissing Correctional Physicians Medical Group ("CPMG")[1] both Section 1983 claims.  The Court's Order was based on the parties' joint motion to dismiss.  However, __new evidence__ gives rise to move this Court to reconsider its Order pursuant to Federal Rules of Civil Procedure, Rule 60(b)(2).

The deliberate indifference claims alleged against CPMG in the third amended complaint were rooted in its failure to implement and train its providers on suicide prevention standards.  Throughout this litigation, CPMG consistently maintained that it implemented suicide prevention protocols and trained its providers pursuant to prevention standards.  Plaintiff requested the policies and training documentation that CPMG gave to its providers.  When deposed, CPMG's provider Brantman testified she was trained in suicide prevention.  When deposed, Dr. Joshua, tough specifically asked, gave no indication that he was of the opinion CPMG had failed to train its providers.  In fact, in his deposition he indicated he was satisfied by CMPG's training.  Based on the record, and in an attempt to narrow the issues, Plaintiff agreed to dismiss CPMG from the Section 1983 claims.

However, on December 6, 2018, the second entity-defendant, the county, produced discovery – discovery that was propounded in May 2018 – that provides the basis for this motion.  Internal emails included in that production illustrate that the relationship between CPMG and the county had become untenable due to CPMG's rampant and systemic failure to address clinical care issues.  In the CPMG "Termination for Cause Notice," Dr. Joshua, The Chief Medical Officer for the Sheriff's Department, stated:

[1] CPMG remains a defendant under state law claims.  In October 2014, the county contracted with CPMG to provide psychiatric services for San Diego County jails. The psychiatric providers are employed by CPMG, not the county.

MOTION FOR RECONSIDERATION                    CASE NO.  16-cv-1974 BEN LL

1
2
3
4
5
6
7

"CPMG['s] lack of control on the psychiatrists and lack of standardization for clinical practices has put the department at extreme risk from a legal standpoint and Sheriff's Medical Service Administration has had to take action based on CPMG's failure to correct clinical care issues. Eight CPMG providers had to be removed by the Sheriff's Medial Service administration with six more CPMG providers on notice to be removed… The Sheriff's command and medical administrative staff met with CPMG on July 6th, 2016 and Dr. Rao, the CPMG Medical Director stated he cannot control the providers and cannot address performance or quality of care issues because they are independent contractors." (Exh. 1.)

8
9
10
11
12
13
14
15
16
17

This email is clear evidence that CPMG does not train or supervise its providers – even those that have been removed or are facing removal – simply because they are independent contractors.  This email also shows that the county had been complaining about CPMG providers since 2015.  Based on the substance of the internal emails capturing the county's candid criticism of CPMG – which details the various inmates that died as a result of the clinical care issues that CPMG intentionally ignored – Plaintiff moves this Court to 1) reconsider its Order dismissing CPMG from the Section 1983 claims; 2) grant leave to add three individual CPMG defendants, Dr. Mannis, Dr. Rao, and Dr. Badre; and 3) grant a narrow timeline to continue discovery limited to this issue.

18
19

## II.

## STANDARD OF REVIEW

20
21
22
23
24
25
26
27
28

Pursuant to Federal Rule of Civil Procedure 60, within a year from entry, a court can reconsider its previous order if new evidence was discovered after dismissal.  See *Jones v. Frazesn*, 2010 U.S. Dist. LEXIS 36731, *11 (under Rule 60(b)(2), new evidence may be grounds for granting a motion for reconsideration).  "To base a motion for reconsideration on the discovery of new evidence, Plaintiff is 'obliged to show not only that this evidence was newly discovered or unknown to [her] until after the hearing, but also that [she] could not with reasonable diligence have discovered and produced such evidence at the hearing.'" *Stucky v. Haw. Dep't* / / /

6

*of Educ.*, 2008 U.S. Dist. LEXIS 37009; *Tagupa v. Vipdesk, Inc.*, 2016 U.S. Dist. LEXIS 7617, *6.

### III.

### NEW EVIDENCE SHOWS CPMG INTENTIONALLY FAILED TO TRAIN ITS PROVIDERS IN SUICIDE PREVENTION

To be entitled to reconsideration pursuant to Rule 60(b)(2), the moving party must show that the (1) evidence constitutes newly discovered evidence; (2) the party exercised due diligence to discover this evidence; and (3) the newly discovered evidence is of such magnitude that production of it earlier would have been likely to change the outcome of the prior order.  See *Coastal Transfer Co. v. Toyota Motor Sales*, 833 F.2d 208, 211 (9th Cir. 1987); *Imagenetix, Inc. v. GNC Holdings, Inc.*, 2013 U.S. Dist. LEXIS 193954, *13.

### A.  Newly Discovered Evidence – The Emails

Plaintiff and CPMG jointly filed for dismissal on October 11, 2018.  [Dkt. #78.]  This Court granted dismissal on November 16, 2018.  [Dkt. # 100.]  On December 6, 2018, the county produced discovery in the form of internal emails regarding "suicide" and other various key terms.  (Exh. 2.)  A few of those internal emails highlighted a heretofore unknown and undisclosed bitter-feud between CPMG and the county.  The basis for the feud provides the basis for reconsideration.

### B.  The Emails Create Material Disputes and Would Defeat Any Dispositive Motion

An August 17, 2016, email from the Sheriff's CMO, Dr. Joshua to Dr. Mannis, the President of CPMG, requested that a certain provider be removed due to quality care issues.  Dr. Joshua complained that "CPMG lack of control on the psychiatrists and lack of standardization for clinical practices has put the department at extreme risk from a legal standpoint." (Exh. 3, 121.)  Dr. Joshua wrote:

7

> To be frank and as I shared this with you during our phone conversation last week, Dr. Rao[2] and Dr. Badre have expressed that any concerns they have related to provider(s) <u>have fallen on deaf ears.</u> You allegedly have not given them autonomy to make decisions about providers and therefore, <u>any corrective action that needs to happen does not happen and not enforced. The providers are generally operating as independent contractors with little regard for our department's mission.</u>

The next email in that same email chain was from Dr. Joshua to Dr. Mannis, dated August 23, 2016.  The email references a KQED publication entitled "When Jail Becomes a Death Sentence."  The article details the circumstances surrounding two in-custody county suicides, Jason Nishimoto and Heron Moriarty.  Dr. Joshua wrote:

> Hi Dr. Mannis, I don't know if you saw this article yesterday. In both suicides and the water intoxication death, CPMG providers had seen the inmate/patient and it was based on their clinical judgment that the inmate was not placed in the inmate safety program, PSU, or a special alert placed on a previous diagnosis. <u>Again this speaks to the quality of training and the providers that CPMG has assembled for the Sheriff's department</u>. <u>Your own psychiatrists have stated that you do not empower them to ensure quality.</u> As you can clearly see, CPMG has put the Sheriff's department at risk with <u>the lack of clinical quality assurance and training.</u>  (Exh. 3, 118-119.)

Three days later, Dr. Mannis responded, "The psychiatrists in CPMG are well trained providers.  I am sorry that you put all the blame on CPMG as there are many issues involved."  (Exh. 3, 119.)  That same day, Dr. Joshua wrote:

> This is not a blame issue <u>but a serious problem with the quality of CPMG providers due to a lack of clinical oversight from a CPMG medical director who has autonomy and authority to ensure quality, provide onboard training, and continuous training</u> to improve clinical practice as well as quality assurance program that attempts to solve problems related to adverse mental health situations. <u>If you were concerned about the quality and clinical effectiveness of CPMG rather than how much is achieved to its bottom line, you would know the following:</u>

---

[2] Dr. Rao is the medical director of CPMG.

MOTION FOR RECONSIDERATION                    CASE NO.  16-cv-1974 BEN LL

Nishimoto: seen by NP Brantman who spoke with his mother and knew patient had suicide attempt and previous history as documented in her note and failed to place the patient in the Inmate Safety Program. She saw the patient and got all the details to make the decision and did not act in the patient's best interest. You did nothing after that event to address the problem. Barbra and I had to ask you to remove the provider based on that and another issue.

…

Quite frankly, <u>your lack of administrative and clinical control as a well as lack of even knowing the facts that your CPMG providers were directly involved in each of these cases, is disheartening and aggravating.</u> Please expect CPMG, yourself, and the providers be responsible for their clinical decisions. Barbara and I <u>have had to do your job to ensure clinical quality by asking you to remove many providers</u> because they either have not been given direction or was known to be a poor fit for corrections. <u>It is aggravating when you have an owner who is not focused on the quality of services provided.</u>

The newly produced emails prove many things; or at the very least, casts doubt on many things.  As for the care given to Nishimoto, the emails show Dr. Joshua believed Nishimoto should have been in the inmate safety program.  In fact, the emails show Dr. Joshua blamed CPMG for Nishimoto's suicide due to a "lack of administrative and clinical control."  Dr. Joshua even cited Nishimoto's suicide in the Termination for Cause Notice between the county and CPMG.  (Exh. 1.)  Most importantly – on a grand scale – the emails show a systemic and intentional failure to train it providers on suicide prevention and to address quality care issues.  The emails themselves suggest a pattern of deliberate indifference.  For example, Dr. Joshua wrote, "Based on CPMG's failure to correct clinical care issues, eight CPMG providers had to be removed by the Sheriff's Medical Services administration with six more CPMG providers on notice to be removed."  (Exh. 1.)  In the Termination for Cause Notice, Dr. Joshua highlights two additional suicides and blamed the deaths on the inadequate treatment given by CPMG providers.  The emails also indicate that CPMG was on notice that its providers needed training on suicide prevention.  Dr. Rao, the CPMG Medical Director, told Dr. Joshua that his complaints regarding CPMG providers "fell on deaf ears."  Dr. Rao also said that he

9

1   "cannot control the providers and cannot address performance or quality of care

2   issues because they are independent contractors."  (Exh. 1.)  Assuming this is true,

3   this is an admission that CPMG does not train its providers.  A systemic failure to

4   train psychiatric providers in suicide prevention has been found to be deliberately

5   indifferent.  See *Connick v. Thompson*, 563 U.S. 51 (2011).  Accordingly, this

6   alone, provides motion-proof foundation for a deliberate indifference claim against

7   CPMG and grounds for reconsideration.

8        Furthermore, though the county has provided no indication to this effect,

9   given the discovery of this feud and the vehement position of the county's CMO,

10  Plaintiff is concerned that the county may assert an empty chair argument to defend

11  Plaintiff's Section 1983 claims asserted against it.  If in trial the county argues its

12  prevention program was sufficient and its nurses were trained but rather it was

13  CPMG that failed to train its psychiatric providers, Plaintiff will be at an extreme

14  disadvantage as there will be no CPMG § 1983 claim. Accordingly, if Plaintiff is

15  precluded from bringing back CPMG on her municipal claims, Plaintiff would face

16  overwhelming prejudice.

17      **C.**      **Plaintiff was Reasonably Diligent in Not Discovering the Emails**

18       Next, Plaintiff must show that the emails could not have been discovered

19  through reasonable diligence prior to dismissal.  Ostensibly, CPMG will argue that

20  these emails should have been the subject of discovery months ago; or, that Plaintiff

21  should have asked for these documents directly from CPMG, not the county.

22       As this Court knows, this litigation involves the county and six of its

23  employees as well as CPMG and its employee, PNP Brantman.  Plaintiff has

24  alleged numerous municipal claims against the county based on its deficient

25  policies and training in regard to suicide prevention.  In the process of propounding

26  discovery, in May 2018, Plaintiff requested internal emails regarding "suicide."

27  (Exh. 4.)  The parties met and conferred on the requested documents for nearly a

28  month.  After the terms and scope of production were agreed upon, the county took

10

an additional <u>four months</u> to produce the documents.[3]  It is those internal emails that provide the basis for reconsideration.  As to this issue, Plaintiff was diligent in asking for these emails in May, months before the discovery cut-off.  Plaintiff was diligent in promptly meeting and conferring on her requests.  Plaintiff was diligent in pursuing the discovery, sending several follow-up emails, as indicated in the Declaration of Danielle R. Pena in Support of Memorandum of Points and Autorities in Support of Opposition to County Defendants' Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment.  [Dkt. # 109-1.]  And, within a week from the December 6, 2018, production, Plaintiff reviwed the production and consulted with CPMG regarding her intention file a motion for reconsideration. (Exh. 5.)

CPMG may also argue that Plaintiff did not pursue any discovery from CPMG regarding this theory.  That is incorrect.  Early in this litigation, Plaintiff propounded discovery requesting all the suicide-related training materials CPMG disseminated to its providers.  (Exh. 6.)  PNP Brantman testified CPMG trained her in suicide prevention. Similarly, Dr. Joshua was deposed in this case prior to entry of the Order dismissing CPMG. Dr. Joshua was specifically asked if he thought PNP Brantman was appropriately trained. Dr. Joshua stated she was appropriately trained but made the wrong decision.  (Exh. 7, 136:8-10.)  Dr. Joshua also testified that no corrective action was necessary.  (Exh. 7, 136:22-25.)  When asked if he had any "criticism with the manner in which CPMG provided training to its psychiatrists and nurse practitioners," Dr. Joshua indicated he was satisfied. Importantly, though asked explicitly, Dr. Joshua failed to indicate any of the training-related concerns highlighted in his emails or the Termination for Cause Notice.  (Exh. 7, 140:17-141:1.) Accordingly, there was no way Plaintiff could have known about this feud when active steps were being taken to conceal it from her.

---

[3] This issue is fully briefed in Plaintiff's Opposition to the County's Motion for Summary Judgment and the supporting declaration of Danielle R. Pena.  [Dkt. 109, 109-1.]

MOTION FOR RECONSIDERATION                    CASE NO.  16-cv-1974 BEN LL

1     Accordingly, due to the state of the evidence and complexity and confusion

2  of this case as is, Plaintiff's counsel made a strategic decision to simplify certain

3  issues and to focus her Section 1983 efforts on the county's prevention and training

4  program based on the documents CPMG produced and the testimony of PNP

5  Brantman and Dr. Joshua.  The diligence and reasonableness of counsel's decision

6  to narrow the issues can be shown by examining the overall discovery efforts by

7  Plaintiff. In this case, Plaintiff has propounded nine sets of special interrogatories,

8  sixteen sets of requests for production, five sets of request for admission, one site

9  inspection and deposed over fifteen witnesses.  Additionally, not one witness, not

10  even Dr. Joshua, mentioned this bitter-feud, even though he was explicitly asked

11  about the relationship with CPMG. In all, Plaintiff has been reasonably diligent.

12     As for propounding this discovery on CPMG rather than the county, Plaintiff

13  had no way of knowing this feud existed.  These documents appeared as a part of a

14  broad email search – Plaintiff did not ask for these documents specifically. Instead,

15  Plaintiff asked for all emails referencing "suicide." Despite countless efforts to

16  obtain the documents, the county dragged its feet for seven months. Plaintiff should

17  not be penalized for not asking for emails she did not know existed. Similarly,

18  because Plaintiff's counsel, based on the evidentiary record, focused on vicarious

19  liability claims against CPMG, rather than Section 1983 claims, Plaintiff did not see

20  the benefit of deposing Dr. Mannis, Dr. Rao or Dr. Badre.

21     In sum, the emails were newly discovered in that they were just produced,

22  after Plaintiff agreed to dismiss CPMG from the Section 1983 claims.  Despite her

23  reasonable efforts, the evidence was not discovered until after CPMG was

24  dismissed.  Based on the nature of the emails, substantively and procedurally,

25  Plaintiff respectfully requests the claims that were dismissed against CPMG to be

26  reinstated.

27  / / /

28  / / /

MOTION FOR RECONSIDERATION         CASE NO.  16-cv-1974 BEN LL

# IV.

## <u>JUSTICE REQUIRES DR. MANNIS, DR. RAO, AND DR. BADRE BE ADDED AS DEFENDANTS</u>

When a party seeks to amend a pleading after the deadline set forth in the applicable case management order, the request implicates both Federal Rule of Civil Procedure 15 and 16.  Rule 16(b) governs the issuance and modification of pretrial scheduling orders while Rule 15(a) governs amendment of pleadings.  Fed. R. Civ. P. 16(b) and 15(a).  The FRCP Rule 16(b) good-cause standard should be applied first, to modify the scheduling order, then the "when justice so requires" standard of Rule 15(a) is applied.  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608-09 (9th Cir. 1992).  Good cause may be demonstrated by a change in circumstance or newly discovered facts.  See *Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist.*, 2006 U.S. Dist. LEXIS 94421 (E.D. Cal. Dec. 15, 2006) (allowing amendment under Rule 16(b) when the amendment was prompted by new evidence obtained through discovery); *Macias v. City of Clovis*, 2016 U.S. Dist. LEXIS 38964, *7.

As detailed above, the newly discovered emails provide "good cause" to add Dr. Mannis, Dr. Rao, and Dr. Badre.  The emails indicate that these high-ranking CPMG officials intentionally failed to train and supervise its providers, even the eight providers that had been removed by Dr. Joshua, and the six more awaiting removal, were not addressed.  The emails indicate that Dr. Rao (and Dr. Badre) admitted that all complaints fell on "deaf ears" and that they could not address quality care issues because the providers were "independent contractors."  Dr. Joshua even indicated that Dr. Mannis was more concerned with the "bottom line" then training and supervising his people.  Based on the Termination for Cause Notice, it is clear these preventable suicides severed the contractual relationship between the county and CPMG.  Accordingly, based on this information, and the circumstances of discovery, justice requires these individuals be added.  This is

13

especially so given the county's ability to offer an empty chair defense that CPMG and its high-ranking officials were responsible for the pattern of previous preventable suicides, as indicated in Dr. Joshua's emails.  Again, Plaintiff was not aware of such a feud until after dismissal.  If the county utilizes this defense, Plaintiff would have no discovery to defend this argument.

Lastly, justice strongly requires that CPMG, Dr. Mannis, Dr. Rao, and Dr. Badre answer for their intentional decision not to train or supervise its providers.  It appears, the county contracted with CPMG specifically to provide expert <u>mental health treatment</u>.  CPMG providers were supposed to be the contracted-for experts in suicide prevention.  Obviously, the county was under the impression that CPMG would take quality care issues and training seriously.  If in fact, CPMG intentionally failed to train its providers for the very thing it was contracted for, then CPMG knowing put mental health inmates at risk allowing its untrained providers to run afoul with the county's prevention protocols.  This is the definition of deliberate indifference.

## V.

## <u>GOOD CAUSE EXISTS TO GRANT ADDITIONAL DISCOVERY ON THIS LIMITED ISSUE</u>

Federal Rule of Civil Procedure 16 provides that the court must issue a pretrial scheduling order that limits the time to complete discovery.  The scheduling "order controls the course of the action unless the court modifies it."  Fed. R. Civ. P. 16(d).  "District courts have 'broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16.'"  *Hunt v. County of Orange*, 672 F.3d 606, 616 (9th Cir. 2012) (quoting *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 833 (9th Cir. 2011)).  Rule 16(b)(4) provides that a pretrial scheduling order may be modified only for good cause and with the judge's consent.  The "good cause" requirement primarily considers the diligence of the party seeking the amendment.  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d

14

604, 609 (9th Cir. 1992).  A pretrial schedule may be modified "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Youngevity Int'l, Corp. v. Smith*, 2017 U.S. Dist. LEXIS 213485, *10.

As detailed above, Plaintiff had no way of knowing this dispute existed prior to December 6, 2018.  Plaintiff therefore would not have pursued the depositions of Drs. Mannis, Rao, and Badre on these grounds prior to discovery cut-off.  Prior to the discovery of the emails, Plaintiff reviewed the record (training documents and testimony) and determined to pursue only vicarious liability against CPMG. Accordingly, Plaintiff agreed to dismiss certain claims.  However, now that the feud and systematic failure on the part of CPMG is known, more discovery solely on this issue must be conducted.

Accordingly, good cause allows for the depositions of Dr. Mannis, Rao, Badre and Dr. Joshua. Good cause would also allow for ten additional RFPs and ten additional special interrogatories on this issue.

## VI.

## **CONCLUSION**

As this Court knows, beginning in March 2013, the county was lambasted by local media regarding its atrocious in-custody suicide rate, the highest in California. Discovery will confirm that CPMG was hired – in the midst of the county's suicide epidemic – for the very purpose of addressing and preventing suicides. Still, despite the county's epidemic, CPMG intentionally failed to train and supervise its providers. This is proof of deliberate indifference. This is also a sound defense for the county. Accordingly, the failure to implement protocols and training claims should be reinstated.

As for Plaintiff's reasonable diligence, she had no way of knowing this fued existed or that CPMG refused to train its employees. CPMG produced prevention policies. Its provider testified she was trained. Dr. Joshua testified she was appropriately trained. And, Dr. Joshua also testified that he was satisfied with

15

1  CPMG training procedures. These intentionally benign responses failed to put

2  Plaintiff on notice that such a feud existed. Additionally, Plaintiff should not be

3  penalized due to the county's unreasonable delay in producing these emails. If the

4  county had produced these emails in a timely manner, taking three months instead

5  of seven months, Plaintiff would not have agreed to dismiss CPMG.

6       Based on the arguments above, Plaintiff respectfully requests this Court

7  reinstate the claims against CPMG, allow for the addition of Dr. Mannis, Rao and

8  Badre, and allow a short period of time to continue discovery on this limited issue.

9                              Respectfully submitted,

10                              **MORRIS LAW FIRM, APC**

11  Dated: January 2, 2019         *s/ Danielle R. Pena*

12                              Danielle R. Pena, Esq.
   dpena@morrislawfirmapc.com

13                              Christopher S. Morris, Esq.
   cmorris@morrislawfirmapc.com

14                              Attorneys for Plaintiff

15                              ROCHELLE NISHIMOTO, Individually,
   and as Successor in Interest to JASON

16                              NISHIMOTO

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR RECONSIDERATION         CASE NO.  16-cv-1974 BEN LL

## INDEX OF EXHIBITS TO MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR:

### 1.  RECONSIDERATION PURSUANT TO FRCP60(B)(2);

### 2.  LEAVE TO ADD THREE CPMG OFFICIALS; AND

### 3.  LEAVE TO CONTINUE DISCOVERY ON A LIMITED ISSUE

| Exhibit | Description | Pages |
|---------|-------------|-------|
| 1 | Termination for Cause Notice | 18-20 |
| 2 | Declaration of Service on the County's Document Production | 21-23 |
| 3 | Emails Between County and CPMG | 24-29 |
| 4 | Plaintiff Rochelle Nishimoto's Request for Production of Documents to Defendant County of San Diego, Set Seven | 30-37 |
| 5 | December 13, 2018, Email From Christopher Morris to Defendants | 38-41 |
| 6 | Plaintiff Rochelle Nishimoto's Request for Production of Documents to Defendant Correctional Physicians Medical Group, Set One | 42-44 |
| 7 | Pertinent Portions of the Deposition of Alfred Joshua, MD | 45-51 |

17

MOTION FOR RECONSIDERATION                    CASE NO.  16-cv-1974 BEN LL

# EXHIBIT 1

### Termination for Cause Notice

Correctional Physicians Medical Group (CPMG) was awarded the contract on October 2014. Strong clinical leadership, orientation of mental health providers, quality assurance, and productivity were basic expectations of the Sheriff's department for this contract. It was communicated to the owner of the contract that full time physicians who are invested and have a passion for mental health in corrections would be needed in order to fulfill the basic expectations. However over the past two years there has been a lack of clinical leadership within CPMG to ensure the right mental health providers are hired who will succeed in a correctional environment and ensure quality of care. CPMG providers have been involved in numerous incidents which included professionalism, quality of care issues, lack of adherence to Sheriff's policies and procedures, productivity, and punctuality to scheduled shifts. CPMG lack of control on the psychiatrists and lack of standardization for clinical practices has put the department at extreme risk from a legal standpoint and Sheriff's Medical Services Administration has had to take actions based on CPMG's failure to correct clinical care issues. Eight CPMG providers had to be removed by the Sheriff's Medical Services administration with six more CPMG providers on notice to be removed. As a result of a lack of strong clinical leadership within CPMG and quality assurance programs, CPMG providers have acted independently in clinical practice and have not adhered to Sheriff's department policies and procedures to the detriment of patients and the department. Currently forty four providers are on the roster to provide mental health services for CPMG. With providers constantly being hired with variable schedules, it is difficult for them to learn the policies, procedures, and priorities of the Sheriff's mental health services. CPMG also hires resident psychiatrists who have not completed residency in psychiatry. While they may be able to moonlight in other settings, the lack of quality assurance and strong clinical leadership makes it difficult to gauge if their standard of clinical practice is different than those who completed residency. This has culminated in three notable lawsuits against the Sheriff's department where CPMG providers' clinical decisions and deviation from Sheriff Protocols resulted in the deaths of inmates.

1. Nishimoto: inmate/patient was seen by CPMG provider NP Brantman and after speaking with the inmate's mother who stated the suicide attempt (overdose) prior to incarceration, recent psychiatric hospitalization, and previous mental health history failed to place the inmate/patient into the Inmate Safety Program as per the Sheriff's Policies and Procedures.
2. ▮▮▮: inmate/patient had a diagnosis of psychogenic polydipsia from Patton State Hospital. The CPMG provider, Dr. ▮▮▮, did not review the inmate's chart upon coming from Patton State Hospital to alert staff of his diagnosis even though his responsibilities as a PSU Attending were to review all incoming patients from state mental health hospitals into the jail. The I/P was seen by CPMG provider. Dr. ▮▮▮ (resident physician) who did not alert medical staff or deputies on the inmate's diagnosis and water restriction even though it was noted in her documentation that the inmate had a history of the diagnosis.
3. Moriarty: the inmate/patient was seen by CPMG provider Dr. Lissaur twice on consecutive days and failed to place the patient on 5150 and admit to PSU for acute psychosis (bipolar) even though the inmate was not improving. CPMG provider NP Daniels saw the patient on the third day and with all of the prior information failed to admit patient to PSU or Inmate Safety Program with prior knowledge of patient's behavior and actions.

These lawsuits and deaths do not encompass the many times we have had CPMG providers deviate or exercise clinical judgment that led to adverse events that did not result in an inmate's death. The quality

CONFIDENTIAL

Improvement reports provided did not address critical incidents that occurred (deaths) and per the medical directors of CPMG, there were no quality improvement programs prior to cure notice. There is variable practice among providers about psychotropic medications prescribed. As a result inmate/patients can be constantly switched on different medications in a short period of time based on the provider they see that day in clinic. These along with variable follow up times have led to inmate and family dissatisfaction with the care they receive and in two instances might have prevented a death. Again strong CPMG clinical leadership would ensure standard of care with prescription habits and follow up times for inmate/patients. The Sheriff's command and medical administrative staff met with CPMG on July 6th, 2016 and Dr. Rao, the CPMG Medical Director stated he cannot control the providers and cannot address performance or quality of care issues because they are independent contractors. Mental Health has been under intense focus by external stakeholders of the Sheriff's department. It is thus important for the Sheriff's department to contract with an entity who has expertise in correctional mental health to address quality of care issues with mental health providers and work together to achieve outcomes that provide the best mental health care for our inmate/patients.

CONFIDENTIAL

Email-000516

# EXHIBIT 2

## DECLARATION OF SERVICE

I, the undersigned, declare under penalty of perjury that I am over the age of eighteen years and not a party to the case; I am employed in the County of San Diego, California. My business address is 1600 Pacific Highway, Room 355, San Diego, California, 92101.

On December 6, 2018, I served the following documents:

1) **DEFENDANT COUNTY OF SAN DIEGO'S RESPONSE TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS [SET SEVEN];**
2) **DEFENDANT COUNTY OF SAN DIEGO'S LOG OF PRIVILEGED DOCUMENTS IN RESPONSE TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS; and**
3) **DEFENDANT COUNTY OF SAN DIEGO'S DOCUMENTS BATES STAMPED EMAIL-000093-1188.**

In the following manner:

☒   **(BY PERSONAL SERVICE)** By causing a true copy(ies) thereof, enclosed in a sealed envelope, to be delivered by hand, to each addressee named below in San Diego, California.

## PLEASE SEE ATTACHED SERVICE LIST

Executed on December 6, 2018, at San Diego, California.

By: _____
Fernando Kish

(Rochelle Nishimoto, individually and as successor in interest to Jason Nishimoto v. County of San Diego, et al; USDC No. 16cv1974-BEN-JMA)

22

## SERVICE LIST

| Christopher S. Morris Esq.<br>Danielle R. Pena, Esq.<br>MORRIS LAW FIRM, APC<br>501 West Broadway, Suite 1480<br>San Diego, CA 92101<br>Phone: (619) 826-8060<br>cmorris@morrislawfirmapc.com<br>dpena@morrislawfirmapc.com | Attorneys for Plaintiff Rochelle Nishimoto,<br>individual and as successor of interest to<br>Jason Nishimoto |

(Rochelle Nishimoto, individually and as successor in interest to Jason Nishimoto v.
County of San Diego, et al; USDC No. 16cv1974-BEN-JMA)

# EXHIBIT 3

| From: | Lee, Barbara |
|---|---|
| To: | Fischetti, Peter; Arce, Rene; Estolano, Carlos; Falayan, Arnold; Macatula, Liza; Padilla, Rex; Womack, Lizzie; Yee, Myrna |
| Subject: | Fwd: Psych Provider termination |
| Date: | Saturday, August 27, 2016 7:11:34 AM |

FYI only.  Please do not disseminate.


Begin forwarded message:


**From:** "Joshua, Alfred (MD)" <Alfred.Joshua@sdsheriff.org>
**Date:** August 26, 2016 at 11:56:29 PM PDT
**To:** Steven Mannis <shmannis@gmail.com>
**Cc:** "Lee, Barbara" <Barbara.Lee@sdsheriff.org>, "steve@cpmedgroup.com"
<steve@cpmedgroup.com>, "Abellar, Jose" <Jose.Abellar@sdsheriff.org>,
"Booth, Nancy" <Nancy.Booth@sdsheriff.org>, "Hernandez, Mike"
<Mike.Hernandez@sdsheriff.org>, "Miller, Rich"
<Richard.Miller@sdsheriff.org>
**Subject: Re: Psych Provider termination**

This is not a blame issue but a serious problem with the quality of CPMG
providers due to lack of clinical oversight from a CPMG psych medical director
who has autonomy and authority to ensure quality, provide onboard training, and
continuous training to improve clinical practice as well as a quality assurance
program that attempts to solve problems related to adverse mental health
situations. If you were concerned about the quality and clinical effectiveness of
CPMG rather than how much is achieved to its bottom line, you would know the
following:
1. Nishimoto: seen by NP Brantman who spoke with his mother and knew patient
had suicide attempt and previous history as documented in her note and failed to
place the patient in the Inmate Safety Program. She saw the patient and got all the
details to make the decision and did not act in patient's best interest. You did
nothing after that event to address the problem. Barbara and I had to ask you to
remove the provider based on that and another situation.
2. ███: Dr. ███ reviewed his chart from Patton hospital (debatable if he
was even reviewing the charts and transfer summaries per your own providers
review) and Dr. ███ saw the inmate in clinic and noted the history of
psychogenic polydipsia but did not tell medical or deputies nor document an alert
for water restriction as our staff would not be expected to know what that
diagnosis entails. We asked Dr. ███ to be removed.
3. Moriarty: patient was seen by Dr. Lissaur two times and then by NP Daniels
(all within 5 days prior to inmate suicide) who did not place the patient in PSU or
Inmate Safety Program even though all the information was provided to them as
per their own documentation. This was reviewed by your medical director who
stated patient should have been admitted to PSU.

Quite frankly, your lack of administrative and clinical control as well as lack of
even knowing the facts that your CPMG providers were directly involved in each

CONFIDENTIAL

of these cases, is disheartening and aggravating. Please expect CPMG, yourself, and the providers be responsible for their clinical decisions. Barbara and I have had to do your job to ensure clinical quality by asking you to remove many providers because they either have not been given direction or was known to be a poor fit for corrections. It is aggravating when you have an owner who is not focused on the quality of services provided.

Alfred Joshua MD, MBA, FAAEM
Chief Medical Officer, Sheriff's Department
San Diego County

On Aug 26, 2016, at 6:28 PM, Steven Mannis <shmannis@gmail.com> wrote:

According to the article, several inmates were not seen by psychiatry ( dont know if this is accurate). It also states that there is no psychiatrist at the facility everyday ( I know this is not true). We also do not have control of Nurses who according to the article did not address the inmates medical condition. I also dont feel any inmate in the PSU should have free access to water among other risks. CPMG feels that there should be more mental health providers for therapy/intake which I recruited for and was ready to start this program.

The psychiatrists in CPMG are well trained providers.I am sorry that you put all the blame on CPMG as there are many issues involved. We will continue to improve our training and Quality Improvement programs.

On Tue, Aug 23, 2016 at 9:59 AM, Joshua, Alfred (MD)
<Alfred.Joshua@sdsheriff.org> wrote:

Hi Dr. Mannis, I don't know if you saw this article yesterday. In both suicides and the water intoxication death, CPMG providers had seen the inmate/patient and it was based on their clinical judgment that the inmate was not placed in the inmate safety program, PSU, or a special alert placed on a previous diagnosis. Again this speaks to the quality of training and the providers CPMG has assembled for the Sheriff's department. Your own psychiatrists have stated that you do not empower them to ensure quality. As you can clearly see, CPMG has put the Sheriff's department at risk with the lack of clinical quality assurance and training.

https://ww2.kqed.org/news/2016/08/22/when-jail-becomes-a-death-sentence/

Alfred A. Joshua MD, MBA, FAAEM
Chief Medical Officer, Sheriff's Department
San Diego County

CONFIDENTIAL

Email-000119

-----Original Message-----
From: Steven Mannis [mailto:shmannis@gmail.com]
Sent: Wednesday, August 17, 2016 11:31 PM
To: Lee, Barbara
Cc: Joshua, Alfred (MD); steve@cpmedgroup.com; Abellar, Jose
Subject: Re: Psych Provider termination

This is not completely true as Dr. ██████ and Dr. ██████ are
no longer working because they did not meet the standards of
Cpmg  The group we have now is committed to high quality of
care I'm happy to work together and will not have any
pharmaceutical representatives at the next meeting

Sent from my iPhone

> On Aug 18, 2016, at 12:26 AM, Lee, Barbara
<Barbara.Lee@sdsheriff.org> wrote:
>
> Dr. Mannis,
>
> Dr. Rao has been involved with issues related to Dr. ██████.  To
be frank and as I shared this with you during our phone
conversation last week, Dr. Rao and Dr. Badre have expressed that
any concerns they have related to provider(s) have fallen on deaf
ears.  You allegedly have not given them autonomy to make
decisions about providers and therefore, any corrective action that
needs to happen does not happen and not enforced.  The providers
are generally operating as independent contractors with little regard
for our department's mission.  I am told that some are unaware of
what that is as you are allegedly not meeting or communicating
with them as a group.  It is important we have a meeting with the
providers after you return from vacation so we can have these
discussions.  I also ask that you please make certain there are no
pharmaceutical representatives invited to that meeting especially if
County staff are to be present. Let's work together to improve our
mental health program.  We want our providers committed not only
towards productivity, but also towards an enhanced quality of care
environment.
>
> Please let me know if you have any questions.  Talk to you soon.
>
> Barbara
>
>> On Aug 17, 2016, at 1:59 PM, Steven Mannis
<shmannis@gmail.com> wrote:
>>
>> Tonight will be his last shift then. It will be removed from all
other shifts. It is impossible to review every single psychiatrist
chart. If there are complaints or concerns about a provider my
director and I need to know about these immediately so we we can

CONFIDENTIAL

Email-000120

review these charts for quality assurance and improvement
purposes. This is the first I've heard of complaints about Dr.
█████
>>
>> Sent from my iPhone
>>
>>> On Aug 17, 2016, at 11:38 PM, Joshua, Alfred (MD)
<Alfred.Joshua@sdsheriff.org> wrote:
>>>
>>> I want him removed immediately. I apologize but as you are
the owner of the contract, the control for quality of care issues is
lacking and as CMO I am forced to enforce quality of the mental
health care provided to inmates to protect the Sheriff's department.
I believe you are confusing productivity for quality as evidenced by
the QA/QI report which did not meet the requirements of what the
contract asked for. CPMG lack of control on the psychiatrists and
lack of standardization for clinical practices has put the department
at extreme risk from a legal standpoint and I will not hesitate to
take actions unilaterally based on the failure to correct clinical care
issues.
>>>
>>> Alfred Joshua MD, MBA, FAAEM
>>> Chief Medical Officer, Sheriff's Department San Diego
County
>>>
>>>> On Aug 17, 2016, at 12:39 PM, Steven Mannis
<shmannis@gmail.com> wrote:
>>>>
>>>> I will need more details before I remove him.   I am out of
town until the 26th. Please contact dr Rao so we may address and
discuss his patient care
>>>>
>>>> Sent from my iPhone
>>>>
>>>>> On Aug 17, 2016, at 7:19 PM, Joshua, Alfred (MD)
<Alfred.Joshua@sdsheriff.org> wrote:
>>>>>
>>>>> Hi Dr. Mannis there have been a number of quality of care
issues brought up about Dr. █████ by other psychiatrists, nursing
staff, and deputies. While he is seeing 25 patients in 2-3 hours and
can be seen as productive, the quality issues deal with abrupt
changes of medications, interactions with inmates that increase
adverse events, and lack of time spent with patients. There are a
number of individuals who have observed Dr. █████ and feel he is
dangerous with his clinical approach. Please remove Dr. █████
from the schedule. Thank you.
>>>>>
>>>>> Alfred Joshua MD, MBA, FAAEM
>>>>> Chief Medical Officer, Sheriff's Department San Diego
County

CONFIDENTIAL

Email-000121

--
Steve

CONFIDENTIAL

Email-000122

# EXHIBIT 4

1    Christopher S. Morris, Esq., SBN 163188
     cmorris@morrislawfirmapc.com
2    Danielle R. Pena, Esq., SBN 286002
     dpena@morrislawfirmapc.com
3    MORRIS LAW FIRM, APC
     501 West Broadway, Suite 1480
4    San Diego, CA 92101
     Telephone:  (619) 826-8060
5    Facsimile:  (619) 826-8065

6    Attorneys for Plaintiffs

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11   ROCHELLE NISHIMOTO,                 **Case No. 16-cv-1974 BEN JMA**
     individually and as Successor in
12   Interest to JASON NISHIMOTO,        **PLAINTIFF ROCHELLE
                                         NISHIMOTO'S REQUEST FOR
13                          Plaintiffs,  PRODUCTION OF DOCUMENTS TO
                                         DEFENDANT COUNTY OF SAN
14        v.                             DIEGO, SET SEVEN**

15   COUNTY OF SAN DIEGO; and
     DOES 1-100, inclusive,
16
                           Defendants.
17

18

19

20

21

22

23

24

25

26

27

28

─────────────────────────────────────────────────────────
REQUEST FOR PRODUCTION TO COUNTY        CASE NO.  16-cv-1974 BEN JMA

1  PROPOUNDING PARTY:        Plaintiff ROCHELLE NISHIMOTO

2  RESPONDING PARTY:         Defendant COUNTY OF SAN DIEGO

3  SET NO.:                  SEVEN (7)

4      Pursuant to Federal Rule of Civil Procedure 34, Plaintiff ROCHELLE

5  NISHIMOTO, respectfully requests that you respond, under oath, to the following

6  Request for Production of Documents within thirty (30) days from the date of

7  service hereof. Pursuant to Federal Rule of Civil Procedure 34, you must also

8  produce the documents requested below within thirty (30) days from the date of

9  service hereof to counsel for Plaintiff, Christopher S. Morris, Esq., MORRIS LAW

10  FIRM, APC, 501 West Broadway, Suite 1480, San Diego, California 92101.

11  **DEFINITIONS**

12      1.    The term "INCIDENT" refers to the events leading up to and

13  surrounding the death of Jason Nishimoto.

14      2.    The term "VDF" refers to Vista Detention Facility located at 325

15  South Melrose Drive, Suite 200, Vista, California 92081.

16      3.    The term "NISHIMOTO" refers to decedent Jason Nishimoto.

17      4.    The terms "YOU" refers to Defendant County of San Diego.

18  **REQUEST FOR PRODUCTION**

19  **REQUEST FOR PRODUCTION NO. 39:**

20      Produce all psychological autopsies of inmates that committed suicide in

21  county jails starting from 2013 through the date of the INCIDENT.

22  **REQUEST FOR PRODUCTION NO. 40:**

23      Any and all San Diego County Sheriff policies and/or procedures regarding

24  arrests of mentally ill and/or suicidal arrestees.

25  **REQUEST FOR PRODUCTION NO. 41:**

26      Produce the intake paperwork filled out by the arresting deputy for

27  NISHIMOTO.

28  / / /

2

REQUEST FOR PRODUCTION TO COUNTY        CASE NO. 16-cv-1974 BEN JMA

**REQUEST FOR PRODUCTION NO. 42:**

Produce the intake paperwork filled out by any intake staff at VDF including but not limited to any medical staff.

**REQUEST FOR PRODUCTION NO. 43:**

All policies related to patrol arrests of mentally ill and/or suicidal arrestees in effect at the time of NISHIMOTO'S suicide.

**REQUEST FOR PRODUCTION NO. 43:**

Produce all policies, customs, and guidelines that governed Anne Brantman's treatment and housing responsibilities concerning NISHIMOTO.

**REQUEST FOR PRODUCTION NO. 44:**

Produce all documents that were filled out or executed by Deputy Klein or any other arresting deputy/officer that is associated with NISHIMOTO'S arrest/transport/intake/booking/acceptance into county jail.

**REQUEST FOR PRODUCTION NO. 45:**

Produce all documents (including but not limited to records, notes, correspondence (electronic or otherwise), screenshots, files, etc.) relating to NISHIMOTO'S administrative segregation evaluation, classification, and placement.

**REQUEST FOR PRODUCTION NO. 46:**

Provide all correspondence  (including but not limited to emails, memorandums, meeting minutes) that references or mentions the words "suicide," "prevention," "rate," "PSA," Kelly Davis," and "CityBeat or City Beat," which were sent or received by any county employee that would be involved in discussions regarding jail suicides from 2013 through the date of the INCIDENT.

**REQUEST FOR PRODUCTION NO. 46:**

Produce all San Diego County Jail Ad-Seg related policies since 2013.

/ / /

/ / /

3

**REQUEST FOR PRODUCTION NO. 47:**

Produce all information required to calculate the county's suicide rate, including booking data, ADP data, suicides per year, and daily census for the years 2012, 2013, 2014, and 2015.

**REQUEST FOR PRODUCTION NO. 48:**

Produce all documents YOU have relating to other county's suicide rates including booking data, ADP data, suicides per year, and daily census for the years 2012, 2013, 2014, and 2015.

**REQUEST FOR PRODUCTION NO. 49:**

Produce any documents identified in response to Special Interrogatory No. 33 served herewith.

Respectfully submitted,

**MORRIS LAW FIRM, APC**

Dated: May 29, 2018

Danielle R. Pena, Esq.
dpena@morrislawfirmapc.com
Christopher S. Morris, Esq.
cmorris@morrislawfirmapc.com
Attorneys for Plaintiffs
ROCHELLE NISHIMOTO, Individually,
and as Successor in Interest to JASON
NISHIMOTO

4

REQUEST FOR PRODUCTION TO COUNTY          CASE NO. 16-cv-1974 BEN JMA

1   Christopher S. Morris, Esq., SBN 163188
     cmorris@morrislawfirmapc.com
2   Danielle R. Pena, Esq., SBN 286002
     dpena@morrislawfirmapc.com
3   MORRIS LAW FIRM, APC
     501 West Broadway, Suite 1480
4   San Diego, CA 92101
     Telephone: (619) 826-8060
5   Facsimile: (619) 826-8065

6   Attorneys for Plaintiffs

7

8             UNITED STATES DISTRICT COURT

9           SOUTHERN DISTRICT OF CALIFORNIA

10

11   ROCHELLE NISHIMOTO,      **Case No.** 16-cv-1974-BEN-JMA
     individually and as Successor in
12   Interest to JASON NISHIMOTO,   **PROOF OF SERVICE**

13               Plaintiffs,

14      v.

15   COUNTY OF SAN DIEGO; and
     DOES 1-100, inclusive,
16
                Defendants.
17

18

19

20

21

22

23

24

25

26

27

28

1         I, the undersigned, am employed in the county of San Diego, State of

2    California. I am over the age of 18 and not a party to the within action; my

3    business address is 501 West Broadway, Suite 1480, San Diego, CA, 92101.

4         On May 29, 2018, I caused to be served the following document(s):

5    • **PLAINTIFF ROCHELLE NISHIMOTO'S SPECIAL**
     **INTERROGATORIES TO DEFENDANT COUNTY OF SAN DIEGO,**
6    **SET FIVE**

7    • **PLAINTIFF ROCHELLE NISHIMOTO'S REQUESTS FOR**
     **ADMISSION TO DEFENDANT COUNTY OF SAN DIEGO, SET TWO**
8

9    • **PLAINTIFF ROCHELLE NISHIMOTO'S REQUEST FOR**
     **PRODUCTION OF DOCUMENTS TO COUNTY OF SAN DIEGO,**
     **SET SEVEN**
10

11   on the parties in this action as follows:

| | |
|---|---|
| Thomas E. Montgomery, County Counsel<br>Juan Fernando Kish, Senior Deputy<br>Melissa Maria Homes, Senior Deputy<br>1600 Pacific Hwy, Room 355<br>San Diego, CA 92101-2469<br>Tel: 619-531-5244<br>Fax: 619-531-6005 | **Attorneys for Defendants,**<br>**COUNTY OF SAN DIEGO and**<br>**ALFRED JOSHUA** |
| Carroll, Kelly, Trotter, Franzen, McBride<br>& Peabody<br>Mark V. Franzen, Esq.<br>Jennifer L. Sturges, Esq.<br>Michelle Buxton, Esq.<br>111 West Ocean Boulevard, 14th Floor<br>Post Office Box 22636<br>Long Beach, CA 90801-5636<br>Tel:   562-432-5855<br>Fax:   562-432-8785 | **Attorneys for Defendant Anne**<br>**Brantman, NP** |
| Lotz, Doggett & Rawers, LLP<br>Jeffrey S. Doggett, Esq.<br>Lauren E. Hardisty, Esq.<br>101 West Broadway, Suite 1110<br>San Diego, CA 92101<br>Tel:   619-233-5565<br>Fax:   619-233-5564 | **Attorneys for Defendant**<br>**Correctional Physicians Medical**<br>**Group, Inc.** |

27   / / /

28   / / /

1

1   ☒   **BY MAIL** - As follows:  I am "readily familiar" with the firm's practice of
collection and processing correspondence for mailing.  Under that practice it would
2   be deposited with the U.S. Postal Service on that same day with postage thereon
fully prepaid at San Diego, California in the ordinary course of business.  The
3   envelope was sealed and placed for collection and mailing on this date following
our ordinary practices.  I am aware that on motion of the party served, service is
4   presumed invalid if postal cancellation date or postage meter date is more than one
day after date of deposit for mailing in affidavit.

5
      I declare under penalty of perjury under the laws of the State of California,
6   that the above is true and correct.

7       Executed on May 29, 2018, at San Diego, California.

8

9                                 Leanna Pierce

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

# EXHIBIT 5

## Danielle Pena

| | |
|---|---|
| **From:** | Chris Morris |
| **Sent:** | Thursday, December 13, 2018 10:48 AM |
| **To:** | Lauren Hardisty; Kish, Fernando; Sturges, Jennifer; Jeff Doggett; Buxton, Michelle |
| **Cc:** | Danielle Pena |
| **Subject:** | RE: Nishimoto |

Lauren:

These emails show that at least the county thought there was a wide spread systemic failure on behalf of CPMG in its provision of care at county jails. These emails were promised to us by the county months ago. It is unfortunate that they were just recently produced. The emails, and the allegations contained therein, were known to your client at a time when they were instructing you to argue that there was "no evidence that would support a Monell claim against CPMG." I will give you the benefit of the doubt and simply assume that you, personally, were not aware of these emails. Nonetheless, these emails provide a solid, factual, good faith, and summary judgement proof basis for a Monell claim against CPMG and 1983 claims against Drs. Mannis, Rao, and Badre. We will be asking the court to reconsider its dismissal of the Monell claim against CPMG, leave to amend the complaint to add the individual doctors, and to re-open discovery on this limited issue; ie, the claims of a systemic failure contained in the emails and the termination for cause notice. I am fairly confident the court will grant these requests. I am hoping that you will simply stipulate to these requests and agree to file a joint motion. We will take the laboring oar in preparing the motion. As to Moriarty, we will also be filing a motion to amend along these same lines and we will be noticing up the relevant depositions, along with document requests, today. Again, we are hopeful that you will allow the complaint to be amended in Moriarty without the need for motion work. Thanks.

Christopher S. Morris
Morris Law Firm, APC
501 West Broadway, Suite 1480
San Diego, CA 92101
Tel:  619-826-8060
Fax: 619-826-8065

**From:** Lauren Hardisty [mailto:lhardisty@ldrlaw.com]
**Sent:** Wednesday, December 12, 2018 6:28 PM
**To:** Kish, Fernando <Fernando.Kish@sdcounty.ca.gov>; Chris Morris <cmorris@morrislawfirmapc.com>; Sturges, Jennifer <jlsturges@cktfmlaw.com>; Jeff Doggett <jdoggett@ldrlaw.com>; Buxton, Michelle <mlbuxton@cktfmlaw.com>
**Cc:** Danielle Pena <dpena@morrislawfirmapc.com>
**Subject:** RE: Nishimoto

Chris – I agree with Fernando that tomorrow's call is not the appropriate time to raise theses issues. You have had this information for 6 days and if you wanted it to be part of the call you should have said something earlier. In fact, it is likely a violation of the Court's meet and confer rules to raise this issue on tomorrow's call. Obviously if you bring it up we will state our position.

With respect to the meet and confer, exactly what do you want? What needs to be brought to the court's attention? Do you want to amend the complaint? Or what exactly. With respect to any agreement you claim we have, the last thing I could find is the attached email where you indicate that you are in fact going to dismiss CPMG entirely. You told me that you were going to dismiss CPMG after Brantman's deposition. So to be clear, we do not agree to have the 1983 cause of

1

action brought back against CPMG, we oppose you naming Dr. Mannis as a defendant as you stated to me in the hall, and I certainly do not think your statements below accurately reflect our conversations.

As to the substance of the emails, Dr. Joshua testified that he did not believe any corrective action was necessary based on what he knew/knows about the Nishimoto case. These email exchanges took place well after this case and are not relevant to whether or not the care provided in this case fell below the standard of care. I am sure there are many other good reasons why they are irrelevant to this case.

Lauren

**From:** Kish, Fernando <Fernando.Kish@sdcounty.ca.gov>
**Sent:** Wednesday, December 12, 2018 4:38 PM
**To:** Chris Morris <cmorris@morrislawfirmapc.com>; Sturges, Jennifer <jlsturges@cktfmlaw.com>; Jeff Doggett <jdoggett@ldrlaw.com>; Buxton, Michelle <mlbuxton@cktfmlaw.com>; Lauren Hardisty <lhardisty@ldrlaw.com>
**Cc:** Danielle Pena <dpena@morrislawfirmapc.com>
**Subject:** RE: Nishimoto

Chris:

I am free at that time but not likely to be in a position to meaningfully meet and confer.  Specifically, because of other commitments, I will not have time to review the numerous meet and confer exchanges on the document production issue.

Also, neither of these issues appears in any way related to the the conference call tomorrow with the court clerk.  Is there a reason why this has to happen ahead of the call?

Feel free to call me at your convenience.

Fernando

**From:** Chris Morris [mailto:cmorris@morrislawfirmapc.com]
**Sent:** Wednesday, December 12, 2018 3:18 PM
**To:** Kish, Fernando; Sturges, Jennifer; Jeff Doggett; Buxton, Michelle; Lauren Hardisty
**Cc:** Danielle Pena
**Subject:** Nishimoto

The recent documents that were delivered on Thursday, December 6, 2018 raise issues that need to be brought to the court's attention.  The purpose of this email to propose that we meet and confer on these issues.

First and foremost, plaintiff dismissed CPMG from the 1983 action with the understanding that if information was received that provides a good faith basis for its inclusion, we would be allowed to amend the pleadings and bring them back into the case. The documents provided by Fernando, albeit incomplete, provide that basis. In particular, the email on August 18, 2016 (Email-0120) states "the CPMG Director stated he cannot control the providers and cannot address performance or quality of care issues because they are independent contractors." Further communications indicate that the county had made several complaints about CPMG providers that went ignored, resulting in further failures. For instance, "per the medical directors of CPMG, there were no quality improvement programs." It appears Dr. Mannis agreed with this assessment when indicating that at the time of Nishimoto's suicide, the CPMG providers were not committed to a high quality of care. Dr. Joshua advised Dr. Mannis that CPMG "providers are generally operating as independent contractors with little regard for our Department's mission." In fact, Dr. Joshua stated that CPMG's failure to train and supervise "in two instances might have prevented a death." (Email-0516) Based on this new information, Plaintiff will seek to add CPMG back into this lawsuit, along with the individual CPMG defendants, and will seek leave for additional discovery on this sole issue.

2

40

Next, the county's December 6 production is incomplete, specifically pertaining to suicide investigations and associated CLERB and medical documents. None of this was provided. This was especially impactful as it prevented Plaintiff's from defending her *Monell* claim. (Appropriate sanctions where already requested therein.) Again, Plaintiff will seek leave for additional discovery on this sole issue.  We would like to meet and confer on this before getting on the phone with the court in the am, I propose a 9:30 call between counsel?

Christopher S. Morris
Morris Law Firm, APC
501 West Broadway, Suite 1480
San Diego, CA 92101
Tel:  619-826-8060
Fax: 619-826-8065

3

# EXHIBIT 6

1  Christopher S. Morris, Esq., SBN 163188
   cmorris@morrislawfirmapc.com
2  Danielle R. Pena, Esq., SBN 286002
   dpena@morrislawfirmapc.com
3  MORRIS LAW FIRM, APC
   501 West Broadway, Suite 1480
4  San Diego, CA 92101
   Telephone: (619) 826-8060
5  Facsimile: (619) 826-8065
   cmorris@morrislawfirmapc.com
6
   Attorneys for Plaintiffs
7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11  ROCHELLE NISHIMOTO,            Case No. 16-cv-1974 BEN JMA
    individually and as Successor in
12  Interest to JASON NISHIMOTO,   **PLAINTIFF ROCHELLE
                                   NISHIMOTO'S REQUEST FOR
13                Plaintiffs,      PRODUCTION OF DOCUMENTS TO
                                   DEFENDANT CORRECTIONAL
14      v.                         PHYSICIANS MEDICAL GROUP,
                                   SET ONE**
15  COUNTY OF SAN DIEGO; and
    DOES 1-100, inclusive,
16
                  Defendants.
17

18

19

20

21

22

23

24

25

26

27

28

---

REQUEST FOR PRODUCTION TO CPMG          CASE NO.  16-cv-1974 BEN JMA

| | |
|---|---|
| PROPOUNDING PARTY: | Plaintiff ROCHELLE NISHIMOTO |
| RESPONDING PARTY: | Defendant CORRECTIONAL PHYSICIANS |
| | MEDICAL GROUP |
| SET NO.: | ONE (1) |

Pursuant to Federal Rule of Civil Procedure 34, Plaintiff ROCHELLE NISHIMOTO, respectfully requests that you respond, under oath, to the following Request for Production of Documents within thirty (30) days from the date of service hereof.  Pursuant to Federal Rule of Civil Procedure 34, you must also produce the documents requested below within thirty (30) days from the date of service hereof to counsel for Plaintiff, Christopher S. Morris, Esq., MORRIS LAW FIRM, APC, 501 West Broadway, Suite 1480, San Diego, California 92101.

## REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**

Provide all policies and training materials relating to suicide prevention, including evaluation, assessment, housing, treatment plan, and training.

**REQUEST FOR PRODUCTION NO. 2:**

Provide employee handbook that was operative at the time of the INCIDENT.

Respectfully submitted,

**MORRIS LAW FIRM, APC**

Dated:  June 7, 2018

Danielle R. Pena, Esq.
dpena@morrislawfirmapc.com
Christopher S. Morris, Esq.
cmorris@morrislawfirmapc.com
Attorneys for Plaintiffs
ROCHELLE NISHIMOTO, Individually, and as Successor in Interest to JASON NISHIMOTO

2

REQUEST FOR PRODUCTION TO CPMG          CASE NO.  16-cv-1974 BEN JMA

# EXHIBIT 7

# In the Matter Of:

## NISHIMOTO vs COUNTY OF SAN DIEGO

16-CV-1974 BEN JMA

## ALFRED JOSHUA, MD

*November 12, 2018*



800.211.DEPO (3376)
*EsquireSolutions.com*

1   training as a result of her clinical decision?

2        A    So based on all of her previous training

3   and everything, she clearly articulated she knew how

4   to do this.  It's just I feel she didn't put all the

5   pieces together based on her documentation even of

6   the risk factors.  She didn't put all together what

7   was happening.

8        Q    So you felt she was appropriately trained

9   but had decided wrong?

10       A    Yes.

11       Q    Okay.  Did you communicate any of this to

12  anyone at CPMG?

13       A    So I believe the medical director, who was

14  at the meeting at the time, probably heard it as

15  well.

16       Q    Did you articulate your position -- did

17  you articulate during the meeting what you just said

18  to us in deposition?

19       A    I believe I would have to, because usually

20  if there was a corrective action, I would also

21  follow up with this person needing to be removed.

22       Q    Sorry.  Didn't mean to interrupt you.

23            In this instance, no corrective action was

24  necessary, correct?

25       A    Yes, based on the determination.

1        Q    Interesting.  All right.  Do you

2    understand that that's -- well, whatever.  Doesn't

3    matter.

4             With respect to the EOH protocol in place

5    in 2015, how was the training provided to the

6    psychiatrists and the psychiatric nurse

7    practitioners when that went into place?

8        A    So they -- there was an on-boarding

9    process where they had an orientation where they

10   were given the policies and procedures and then

11   explained how the enhanced observation protocol

12   worked, and they also, I believe, met with the CPMG

13   director to go through the training as well.

14       Q    So both the County and CPMG provided this

15   training?

16       A    Yes.

17       Q    Did you have any, as medical director in

18   2015, criticism with the manner in which CPMG

19   provided that training to its psychiatrists and

20   nurse practitioners?

21       A    So I was basically told that it was

22   essentially done on the individual level as

23   providers were coming on board.

24       Q    Okay.

25       A    And that it was being done by the medical



1    director.

2         Q    But the providers who were already there,

3    that training was provided to them by the County?

4              MR. KISH:   Objection.   May call for

5    speculation, lacks foundation.

6              THE WITNESS:   So CPMG came after I was

7    chief medical officer, so everybody would have gone.

8    BY MS. HARDISTY:

9         Q    Okay.   When did the EOH protocol go into

10   place?  Do you recall?

11        A    The protocol went into place February of

12   2015.

13        Q    Okay.   And the County then provided

14   training on the EOH protocol?

15        A    Yes.

16        Q    Okay.   And that would have included

17   training to any of the psychiatrists or psychiatric

18   nurse practitioners who were providing care in the

19   jails, correct?

20        A    Yes, it would have been provided to all of

21   them.

22        Q    Okay.   When you met with Anne Brantman,

23   you said you brought the capacity report with you;

24   is that correct?

25        A    Yes.



ALFRED JOSHUA, MD
NISHIMOTO vs COUNTY OF SAN DIEGO

November 12, 2018
227

```
 1              DECLARATION UNDER PENALTY OF PERJURY
 2              I declare under penalty of perjury
 3      that I have read the entire transcript of
 4      my Deposition taken in the captioned matter
 5      or the same has been read to me, and
 6      the same is true and accurate, save and
 7      except for changes and/or corrections, if
 8      any, as indicated by me on the DEPOSITION
 9      ERRATA SHEET hereof, with the understanding
10      that I offer these changes as if still under
11      oath.
12          Signed on the _____ day of _____, 20____.
13
14      _____
        ALFRED JOSHUA, MD
15
16
17
18
19
20
21
22
23
24
25
```



800.211.DEPO (3376)
EsquireSolutions.com

ALFRED JOSHUA, MD                                    November 12, 2018
NISHIMOTO vs COUNTY OF SAN DIEGO                              230

```
 1                    REPORTER'S CERTIFICATION

 2

 3            I, Angie Schultz-Messenger, a certified

 4      shorthand reporter, in and for the State of

 5      California, Certificate No. 11742, do hereby

 6      certify:

 7

 8            That the foregoing proceedings were

 9      reported by me stenographically and later

10      transcribed into typewriting under my direction;

11      that the foregoing is a true record of the

12      proceedings taken at that time.

13

14            IN WITNESS WHEREOF, I have subscribed my

15      name this 28th day of November, 2018.

16

17
```



```
18        _____
          Angie Schultz-Messenger, CSR No. 11742
19

20

21

22

23

24

25
```