THOMAS E. MONTGOMERY, County Counsel
County of San Diego
By FERNANDO KISH, Senior Deputy (SBN 236961)
   MELISSA M. HOLMES, Senior Deputy (SBN 220961)
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 531-4713; Fax: (619) 531-6005
E-mail: fernando.kish@sdcounty.ca.gov

Attorneys for Defendants County of San Diego, Kyle Klein, Leah Gache, Vicky Felizardo, Lavinia Fifita, Rudolph Gertzki and Ethan Miedecke

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCHELLE NISHIMOTO, individually and as Successor in Interest to JASON NISHIMOTO,<br><br>            Plaintiff,<br><br>     v.<br><br>COUNTY OF SAN DIEGO; and DOES 1-100, inclusive<br><br>            Defendants. | No. 16cv1974-BEN-LL<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTY DEFENDANTS' MOTION FOR SANCTIONS AGAINST PLAINTIFF AND HER ATTORNEY DANIELLE PENA |

# I
# INTRODUCTION

Plaintiff designated Robert Canning, Ph.D. as her "correctional suicide prevention expert." During Dr. Canning's deposition, plaintiff's attorney, Danielle Pena, sent Dr. Canning twelve text messages. Through these messages, Ms. Pena contemporaneously provided Dr. Canning with answers to the questions being asked by defense counsel. These messages included the factual basis for Dr. Canning's opinions and even the opinions themselves. When questioned about looking at his phone during the deposition, Dr. Canning admitted to receiving the messages from Ms. Pena. Ms. Pena instructed Dr. Canning to "read the **two** texts that I sent you" when in fact there were **twelve** messages. By sending these text messages, Ms. Pena impermissibly coached Dr. Canning's testimony and impeded and/or frustrated the fair examination of Dr. Canning in violation of Federal Rule of Civil Procedure, rule 30. This is a bell that cannot be unrung because defendants will never know what Dr. Canning's answers would have been if not for Ms. Pena's messages. Accordingly, the County Defendants request an order from the Court precluding Dr. Canning from testifying at trial and monetary sanctions against the plaintiff and/or Ms. Pena for the reasonable attorneys' fees and costs incurred in preparing for and taking the deposition of Dr. Canning and for bringing this motion and any other sanction this court deems appropriate.

# II.
# SUMMARY OF PERTINENT FACTS

Dr. Canning's deposition took place on November 6, 2018 in Costa Mesa, California. Notice of Lodgment ("NOL") Ex. 1, Canning Depo No. 1. The videoconference deposition took place with Jennifer Sturges, counsel for defendant Anne Brantman, the noticing party, appearing from Costa Mesa, California and Dr. Canning appearing by videoconference from another location. Holmes Decl., ¶ 2. Melissa Holmes, counsel for the County defendants, and Lauren Hardisty, counsel for defendant Correctional Physicians Medical Group, Inc. ("CPMG"), attended the deposition via

1 video conference set up at Esquire Deposition Solution's office located at 402 West
2 Broadway, Suite 1550, San Diego, CA 92101 ("Esquire's Office"). *Id*. Ms. Pena also
3 attended the deposition via video conference. *Id*. However, she connected from her
4 office located at 501 West Broadway, Suite 1480, San Diego, CA 92101, which is
5 directly across the street from Esquire's office. *Id*. The deposition started at 10:05 a.m.
6 and concluded at 1:50 p.m. NOL Ex. 1, Canning Depo No. 1. Ms. Pena sent Dr.
7 Canning a total of twelve text messages during that time. NOL Ex 2, Pena's Text
8 Messages. Each text is stamped with the time sent. *Id*.

| Message | Time |
|---|---|
| Is the report that you sent me with notes, is that final? It's not signed. I'd like to give it to them. | 10:35 AM |
| Prior to your report, we didnt not have brantman depo. But you spoke with me about her testimony. | 10:41 AM |
| We did send you the depo but after your report. It's fine. Your opinions are about the policy really | 10:41 AM |
| 30 to 60 Klonopin | 10:47 AM |
| Still have tie off points | 11:02 AM |
| Eoh or safety cell was appropriate | 11:02 AM |
| Vdf does have an eoh | 11:03 AM |
| Youre a Rockstar!! | 11:03 AM |
| Bottom of first page | 12:16 PM |
| Bottom of 119 top of 120 | 12:21 PM |
| Did klonopin it in July as a suicide attempt | 12:22 PM |
| Killing it! | 12:__ PM[1] |

23 *Id*. When the text messaging was uncovered during the deposition, Ms. Pena instructed
24 Dr. Canning to read two messages. NOL Ex. 1, Canning Depo No. 1, 107: 18-108:7.
25 However, Dr. Canning had received a total of twelve messages during the deposition.
26 NOL Ex 2, Pena's Text Messages.
27 ///
28

---

[1] The full time stamp for this text message is not legible. See NOL Ex 2

2

No. 16cv1974-BEN-LL

# III.
# LEGAL STANDARD FOR SANCTIONS

Federal Rule of Civil Procedure 30(d)(2) provides: "The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." By its terms, this rule permits the court to impose sanctions on any person involved in a deposition (including but not limited to the parties and attorneys) who frustrates the examination of the deponent. Fed. R. Civ. P. 30(d) advisory committee note to 2000 amendment.

> Discovery abuse has been a topic of widespread concern in the legal community. *See Shelton v. Am. Motors Corp.,* 805 F.2d 1323, 1330 (8th Cir.1986); *see also Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 559, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Preventing such abuse depends in part on reducing the reluctance of attorneys to seek sanctions and of judges to impose them. *See Matter of Yagman,* 796 F.2d 1165, 1182 (9th Cir.1986); *see also* Fed.R.Civ.P. 26, advisory committee notes (1983 amendments). The purpose of sanctions is to "penalize those whose conduct may be deemed to warrant" them and "deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club,* 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976).

*Security National Bank of Sioux City, IA v. Day*, 800 F.3d 936, 942 (8th Cir. 2015)

Rule 30(d)(2) does not limit the types of sanctions available; it only requires that the sanctions be "appropriate." *San Francisco v. Verizon S., Inc.,* 756 F. Supp.2d 705, 712 (E.D. Va. 2010), aff'd, 2 442 F. App. 752 (4th Cir. 2011)("Although Rule 30(d)(2) does not define the phrase 'appropriate sanction,' the imposition of discovery sanctions is generally within the sound discretion of the trial court."). It is not necessary for opposing counsel to request sanctions for attorney misconduct. The text of Rule 30 (d) contains no motion-related preconditions; it simply provides that "[t]he court may impose an appropriate sanction" on a person who obstructs a deposition. The Supreme Court has noted that "court[s] generally may act sua sponte in imposing sanctions under the Rules." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 n. 8.

///

In addition, district courts have a " 'well-acknowledged' inherent power…to levy sanctions in response to abusive litigation practices." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 765 (1980). "A primary aspect of that [power]is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers,* 501 U.S. at 44-45. "[T]he inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct. *Id*. at 49.

## IV.
## ARGUMENT

A. <u>Sanctions Are Warranted Because Ms. Pena Frustrated And Impeded The Fair Examination Of Dr. Canning.</u>

"An attorney must respect the important ethical distinction between discussing testimony and seeking improperly to influence it." *Geders v. United States*, 425 U.S. 80, 89–91, fn. 3 (1976).  Rule 30 prohibits an attorney from objecting during a deposition in a manner that suggests the answer.  Fed. R. Civ. P. 30(c)(2) ("An objection must be stated concisely in a nonargumentative and nonsuggestive manner.")  In fact, Rule 30 requires the examination of deponent to proceed as it would at trial.  Fed. R. Civ. P. 30(c)(1); *see also, Hall v. Clifton Precision, a Div. of Litton Sys., Inc.,* 150 F.R.D. 525, 528 (E.D. Pa. 1993) ("Under Rule 30(c), depositions generally are to be conducted under the same testimonial rules as are trials.")  "As with trial testimony, discussions between counsel and the witness may not occur because 'once a deposition begins, the right to counsel is somewhat tempered by the underlying goal of our discovery rules: getting to the truth.' " *Ngai v. Old Navy*, 2009 WL 2391282, at *4 (D.N.J. July 31, 2009) (quoting *Hall,* 150 F.R.D. at 528–9.) "The goal of obtaining the facts of a case is defeated when the lawyer and not the witness is answering questions or influencing the answers to them." *Id*.

> The underlying purpose of a deposition is to find out what a witness saw, heard, or did—what the witness thinks. A deposition is meant to be a question-and-answer conversation between the deposing lawyer and the witness. There is no proper need for the witness's own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer, and helping the witness to formulate answers. The witness

4

> comes to the deposition to testify, not to indulge in a parody of Charlie McCarthy, with lawyers coaching or bending the witness's words to mold a legally convenient record. **It is the witness—not the lawyer—who is the witness.**

*Hall*, 150 F.R.D. at 528 (emphasis added).

"Once a question is asked, a lawyer should not coach the deponent or suggest answers, whether through objections or other means." *Claypole v. County of Monterey*, 2016 WL 145557, at *2 (N.D. Cal. Jan. 12, 2016) (quoting N.D. Cal. Guidelines for Professional Conduct, § 9(i)); see also *Funk v. Town of Paradise*, 2011 WL 2580357, at *2 (E.D. Cal. June 28, 2011) (sanctioning counsel for "appalling" behavior where counsel "repeatedly interrupted the proceedings, interjected editorial comments, and coached or suggested information to the witnesses"); *Cotton v. City of Eureka*, 2010 WL 2889498, at *1-3 (N.D. Cal. July 22, 2010) (noting that an attorney violated Rule 30(c)(2) when she "interposed improper coaching objections and improper speaking objections").

The holding in *Ngai v. Old Navy* is instructive. In *Ngai*, the deposing attorney moved to compel[2] disclosure of text messages that the attorney defending the deposition sent to the deponent during the deposition. 2009 WL 2391282, at *1. As part of the same motion, the attorney sending the text messages also moved to withdraw as counsel. *Id*. The deposing attorney took the deposition via video conference from New Jersey, the deponent was in California, and the defense attorney sending the text messages was in Michigan. *Id*. Immediately before the deposition, the defending attorney and the witness exchanged eleven text messages and an additional five messages during the deposition itself. *Id*. The defending attorney accidently sent one of the messages to the deposing attorney stating "you are doing fine" and falsely responded that it was intended for his son when asked about it. *Id*. In addition to ruling that text messages exchanged during the deposition were not privileged, the court also ruled that the messages violated Rule 30. *Id* at *4. The Court reasoned as follows:

---

[2] The motion before the court did not request sanctions. *Ngai*, 2009 WL 2391282, at *1.

5

>Pursuant to Fed.R.Civ.P. 30(c), depositions are to be conducted in the same manner as trial examination. *See Plaisted v. Geisinger Medical Center,* 210 F.R.D. 527, 535 (M.D.Pa.2002) (citing Fed.R.Civ.P. 30(c)). To this end, under Rule 30, "counsel should not engage in any conduct during a deposition that would not be allowed in the presence of a judicial officer. . . . Put plainly, [] counsel passed notes to his client, albeit in an electronic form, while she testified and such behavior would never be permitted at trial."

*Id.* The Court concluded that it "cannot condone []counsel's conduct for many reasons, not the least of which because it undermines the trust needed for the system to function and it sought to impact the truth finding process. *Id* at *5.

Case law is replete with other examples of sanctions being imposed against attorneys who impermissibly coach their witnesses. *Tucker v. Pac. Bell Mobile Servs.,* 186 Cal. App. 4th 1548, 1562 (2010) (Attorney sanctioned for abusing the discovery process because the attorney coached the witness by writing on a legal pad and showing to the witness during the deposition.); *Lucas v. Breg, Inc.,* 2016 WL 2996843, at *4 (S.D. Cal. May 13, 2016) ("Sanctions also can be warranted where counsel improperly engages in speaking objections or coaches the deponents"); *Horowitz v. Chen*, 2018 WL 4560697, at *5 (C.D. Cal. Sept. 20, 2018) (Sanctions ordered against attorney who coached witness during deposition by taking breaks while question was pending and making objections that suggested the answer); *Lund v. Matthews*, 2014 WL 517569, at *5 (D. Neb. Feb. 7, 2014) (Sanctions ordered against attorney for making objections that suggested the answer and whispering in deponent's ear while the deponent was being questioned.); *Claypole*, 2016 WL 145557, at *3-4 (awarding sanctions where counsel made objections with commentary that coached the deponent's answers and instructed the witness not to answer on the basis of an "asked and answered" objection).

In this case, Ms. Pena did not merely suggest an answer through an objection, she specifically fed Dr. Canning answers to the questions being asked. In a more recent deposition, Dr. Canning confirmed that Ms. Pena planned this in advance and told him about it.

>Q.· ·Did you have an advance arrangement with Dani Pena that she would be texting you during your deposition?

A.· ·I believe she did tell me, but I actually didn't know what that means.· But that doesn't mean you have to read them, does it.

Q.· ·Thank you. Can you mark that spot, please. And was the arrangement that you would have your cell phone with you during the deposition in case she needed to text you something?

A.· ·She said she would be communicating to me.

Q.· ·By text?

A.· ·I think she said by text, yes.

NOL Ex. 3, Canning Depo No. 2, 143:4-17.  Plaintiff may argue that Dr. Canning did not read the messages or they did not influence his testimony.  However, that is belied when Dr. Canning testimony is compared side by side to the text messages he received.

Q· · Okay.· So would that be an appropriate place for Mr. Nishimoto to have been placed if there was a risk of suicide and also a risk of withdrawal from benzodiazepine?

[**Text Message:  "Still have tie off points[3] 11:02 AM"**]

THE WITNESS:· Right.· Medical observation --

THE WITNESS:· Medical observation beds offer increased monitoring, but they're still -- they're not necessarily the same as a room that's designed for – to reduce suicide risk for someone who's imminently suicidal.

Q· Are you advocating that Mr. Nishimoto should have been placed in a safety cell?

[**Text Message:  "Eoh or safety cell was appropriate 11:02 AM"**]

A· · I'm advocating that he should have been placed in a safety or EOH cell, yes. . . .

Q.  And where would that have been?

[**Text Message:  "Vdf does have an eoh 11:03 AM"**]

A· · I believe that VDF has EOH cells. · Again, I would have to look at my records, but they had safety cells, that's certainly true.

NOL Ex. 1, Canning Depo No. 1, 48:21-49:23; NOL Ex. 2, Pena's Text Messages.

Plaintiff may suggest that sanctions are not warranted because Ms. Pena self-sanctioned herself by waiving the attorney-client privilege as to the text messages.  In

---

[3] Tie off points refers to points where a noose can be tied to.

other words, Ms. Pena could have hidden her improper text messages behind a cloak of privilege but chose not to. This is incorrect. "Because a deposition generally proceeds as at trial, courts have held that once a deposition starts, counsel has no right to confer during the deposition except to determine if a privilege should be claimed." *BNSF Ry. Co.*, 2009 WL 3872043, at *3; *See*, *Ngai*, 2009 WL 2391282, at *4 ("[T]he text messages exchanged between the deponent and [] counsel were private conversations during a deposition but they are not protected by the attorney-client privilege.") More importantly, disclosing the text messages did not cure the impact of those messages had on Dr. Canning's testimony. Specifically, the parties could not go back in time and ask Dr. Canning the same questions without the influence of Ms. Pena's text messages.

B. <u>Precluding Dr. Canning From Testifying At Trial Is An Appropriate Sanction Because The County Defendants Have Been Permanently Deprived Of The Opportunity To Fairly Question Dr. Canning</u>.

Because of Ms. Pena's text messages, the defendants were deprived of the opportunity to obtain Dr. Canning's testimony untainted by Ms. Pena's coaching. This deprivation is permanent and cannot be cured. The parties cannot go back in time, ask the questions again, and have Dr. Canning "unsee" the text message before giving his answers. Thus, a second deposition of Dr. Canning does not cure the violation committed by Ms. Pena.

Plaintiff may argue that she should not be punished for her attorney's transgression. Plaintiff has suggested that precluding Dr. Canning from testifying at trial would negatively impact plaintiff's federal municipal liability claims against the County. Plaintiff's argument is unavailing. First "[t]here is certainly no merit to the contention that dismissal of [a party's] claim because of his counsel's unexcused conduct imposes an unjust penalty on the client." *See Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381, 1387 (9th Cir. 1988) (quoting *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633 (1962)). Plaintiff "voluntarily chose [her] attorney as [her] representative in th[is] action, and [she] cannot now avoid the consequences of the acts or omissions of this freely selected

agent." *Id*. (quoting *Link*, 370 U.S. at 633-34).  Certainly, any prejudice to the parties resulting from Ms. Pena's rule violation should be borne by the plaintiff and not the innocent defendants.  This is particularly true because the purported prejudice to the plaintiff can be cured to the extent plaintiff has designated other experts with seemingly overlapping area of expertise.  Specifically, plaintiff designated Richard Lichten and Michael McMunn, whom according to plaintiff's designation are expected to testify on correctional practices and procedures, defendants' policies and procedures, training, and the care and treatment received by Mr. Nishimoto.  See NOL Ex. 4, Plaintiff's Expert Designation.  These experts appear to overlap the testimony that plaintiff sought to elicit from Dr. Canning as reflected in plaintiff's designation.  Between McMunn and Lichten, any prejudice to the plaintiff resulting from the preclusion of Dr. Canning can be minimized.

C. <u>Monetary Sanctions Are Appropriate Because Ms. Pena's Text Messages Rendered The Deposition Of Dr. Canning Valueless.</u>

The County Defendants sought to depose Dr. Canning to have him explain his opinions and provide the factual support for those opinions.  The County Defendants did not want or seek Ms. Pena's opinions or interpretation of facts. However, by sending Dr. Canning messages during his deposition, it was Ms. Pena that was effectively testifying.  These messages included some of the factual background for Dr. Canning's opinion; namely, that Mr. Nishimoto ingested "30 to 60 Klonopin," that medical observation cells "still have tie off points," and that "vdf does have an eoh."  NOL Ex. 2, Pena's Text Messages.  One of the messages even provides Dr. Canning with the opinion that "Eoh or safety cells was appropriate." *Id*.  By sending these messages, the County Defendants were deprived of their opportunity to fairly examine Dr. Canning.  Where an attorney has frustrated the fair examination of the deponent, "sanctions may include attorney's fees for [sic] incurred as a result of the improper conduct and the necessity of filing a motion with the Court."  *BNSF Ry. Co.,* 2009 WL 3872043, at *3; *see also* Fed. R. Civ. P. 30(d)(2) ("The court may impose an appropriate sanction--including the reasonable expenses and

attorney's fees incurred by any party--on a person who impedes, delays, or frustrates the fair examination of the deponent.")

Pursuant to Judge Lopez's chamber rules, the parties met and conferred multiple times and participated in conference calls with the court clerk in an effort to resolve the issue amicably. Unfortunately, plaintiff was unwilling to voluntarily withdraw Dr. Canning as a testifying expert in this case and also not willing to pay the County Defendants for their expenses related to Dr. Canning's deposition. As such, the instant motion became necessary. As set forth in the accompanying declarations, the County Defendants incurred a total of $3,842.59 in fees and expenses related to Dr. Canning's deposition and total of $7,007.00 in fees related to this motion and the meet and confer process. (See Holmes Decl. ¶¶ 4-8; See Kish Decl., ¶¶ 4-6.)

## V
## CONCLUSION

Based upon the foregoing, the County Defendants respectfully request this Court grant their motion for sanctions against the plaintiff and Ms. Pena.

DATED: January 9, 2019         THOMAS E. MONTGOMERY, County Counsel

By: s/FERNANDO KISH, Senior Deputy
Attorneys for Defendants County of San Diego,
Kyle Klein, Leah Gache, Vicky Felizardo,
Lavinia Fifita, Rudolph Gertzki and Ethan Miedecke
E-mail: fernando.kish@sdcounty.ca.gov