Christopher S. Morris, Esq., SBN 163188
cmorris@morrislawfirmapc.com
Danielle R. Pena, Esq., SBN 286002
dpena@morrislawfirmapc.com
MORRIS LAW FIRM, APC
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone:  (619) 826-8060
Facsimile:  (619) 826-8065

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCHELLE NISHIMOTO, individually and as Successor in Interest to JASON NISHIMOTO,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO; and DOES 1-100, inclusive,<br><br>Defendants. | **Case No. 16-cv-1974 BEN LL**<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO RE-TAX COSTS**<br><br>Date:          June 3, 2019<br>Time:          10:30 a.m.<br>Dept:          5A<br>Judge:        Hon. Roger T. Benitez |

1

# I.

## __INTRODUCTION__

Defendant Brantman's opposition is two-fold.  Defendant Brantman's first basis for opposition relies on emails from counsel wherein Mr. Morris stated Defendant Brantman's deposition testimony was "totally believable" and "a game-changer."  Mr. Morris' email is being used as a basis to support Defendant Brantman's contention that the case against her was meritless.  Initially, the case against Defendant Brantman clearly had merit because it was Defendant Brantman that first informed Plaintiff the <u>county</u> had sent her an intent to sue letter based on her failure to recommend suicide precautions.  Based on that, Plaintiff added Defendant Brantman and sought to depose her.

Following her deposition, while Mr. Morris believed Defendant Brantman's testimony that she verbally requested suicide precautions, others did not.  Particularly, Plaintiff, Rochelle Nishimoto, did not believe Defendant Brantman's story because Rochelle was a nurse and knew such a concern and recommendation would be documented.  Other persons, whose identities cannot be mentioned pursuant to rules governing confidentially, also thought Defendant Brantman's story was questionable.  (Declaration of Danielle R. Pena ("Pena Decl."), ¶ 2.)  Given the county's continued contention that Defendant Brantman never recommended suicide precautions as evidenced by her own contemporaneous evaluation note and lack of corroborating witnesses, and others strong opinions that Defendant Brantman was not being truthful, Defendant Brantman could not be dismissed regardless of Mr. Morris' personal belief.

Defendant Brantman's second basis for opposition is her un-supported contention that this case should be dissected into two parts for the purposes of analyzing the public policy factors identified in *Ass'n of Mex.-Am. Educators*, 231 F.3d 572, 591-93 (9th Cir. 2000). Case law in this circuit held otherwise by explicitly examining the case as a whole when analyzing the factors against the

REPLY ISO MOTION TO RE-TAX COSTS                    CASE NO.  16-cv-1974 BEN LL

prevailing defendants. Even assuming there is precedent to analyze the *Ass'n of Mex.-Am.* factors solely as to Defendant Brantman individually, it was this case that prompted the county to investigate Defendant Brantman's conduct, as well as CPMG as a whole, which ultimately led to Correctional Physician's Medical Group's ("CPMG") termination in November of 2016.

Internal county emails indicate that twenty days after Plaintiff filed her lawsuit, the county began making moves to terminate CPMG based on Defendant Brantman's failure to recommend safety precautions. [Dkt. # 119-1, pg. 19.] In fact, the county pointed to CPMG's systemic failures in training and supervising their providers as the direct cause of not only Nishimoto's death, but other preventable suicides. *Id.* After two months of finger-pointing, in November of 2016, the county terminated CPMG and hired a new psychiatric contractor. Notably, during the three-year period (2014-2016) CPMG held the county's psychiatric services contract, 13 inmates committed suicide. After CPMG's termination in November of 2016, the county reported **zero** suicides in 2017. **This case made a difference.**

CPMG failed to file an opposition to Plaintiff's motion to re-tax. Pursuant to Local Rule 7.1.f.3.c., if an opposing party fails to file an opposition, such a failure may constitute consent to the granting of Plaintiff's motion. Plaintiff requests CPMG's non-opposition be taken for what it is.

The clerk's order taxing costs in the amount of $21,065.09 for CPMG and $21,756.26 for Defendant Brantman, should be re-taxed and reduced to zero based on (1) the factors set forth in applicable Ninth Circuit law, (2) the circumstances initially requiring Plaintiff to name Defendant Brantman and CPMG (the county's intent to sue letter), (3) the overall settlement result and likelihood of CPMG indemnification, (4) the public exposure of the county's egregious suicide rate and CPMG's systemic failure to train and supervise, (5) the termination of CPMG from correctional psychiatric services resulting in zero suicides the following year, and

3

(6) the achievement of comprehensive policy and training reform.  An order requiring Rochelle to pay $42,000 would cause a chilling effect for future civil right litigants.

## II.

## MR. MORRIS' EMAILS DO NOT PROVE THE CASE WAS MERITLESS AGAINST DEFENDANT BRANTMAN

One of the *Ass'n of Mex.-Am.* factors examines the losing party's case and analyzes whether the case had merit, although unsuccessful.  To support her claim that the case was meritless, Defendant Brantman relies on Mr. Morris' emails stating he believed Defendant Brantman's testimony that she verbally requested suicide precautions, and based on that belief should be dismissed.  Yes, Mr. Morris meant that.  However, Mr. Morris' belief is not controlling as to whether the case had merit.  Given the lack of corroborating witnesses, the failure to document her recommendation and the contemporaneous evaluation note entirely dismissive of suicide concerns, the case against Defendant Brantman had merit.  Notably, while Mr. Morris believed Defendant Brantman, Plaintiff did not; nor did others involved in this lawsuit.  (Pena Decl., ¶ 2.)

Furthermore, it appears Plaintiff's negligence claim would still be viable if Plaintiff's nursing expert remembered to sign his report.  The expert's failure to sign his report does not equate to a meritless case against Defendant Brantman.

## III.

## PUBLIC POLICY STRONGLY SUPPORTS DENIAL OF DEFENDANT BRANTMAN'S COSTS

Defendant Brantman attempts to escape Ninth Circuit precedent by arguing that this case should be severed into two parts for the purposes of analyzing the public policy factors identified in *Ass'n of Mex.-Am. Educators*, 231 F.3d 572, 591-93 (9th Cir. 2000).  Defendant Brantman failed to offer authority for her contention.  Conversely, in *Tubbs v. Sacramento County Jail*, 258 F.R.D. 657 (E.D. Cal. August

4

21, 2009), the court considered the case as a whole when denying costs to a prevailing defendant holding that although the civil rights plaintiff "did not prevail in all claims in this action, his claims were not without merit." The court held:

> The jury verdict in favor of plaintiff against four defendants demonstrates the *plaintiff's case* did not lack merit. Furthermore, plaintiff's argument that he is indigent is compelling and has been supported by evidence. See Docket No. 5. Additionally, "imposing costs on losing civil rights plaintiffs of modest means may chill civil rights litigation" that is important to the legal system. *Stanley*, 178 F.3d at 1080. In this case, the costs plaintiff faces are significantly less than the award the plaintiff faced in *Stanley*. Nevertheless, imposing payment of $3,798.09 when an individual is indigent would be inequitable. Based on the evidence of the plaintiff's limited financial resources and the possibility that the imposition of the award would have a chilling effect on civil rights litigants, an award of costs against plaintiff would be inequitable. Accordingly, this court sustains plaintiff's objections to defendants' Bill of Costs and denies defendants' request to recover their costs in total.

In *Tubbs*, the court looked at the case as a whole in regards to the public policy factors. As in *Tubbs,* this case was meritorious against the county and resulted in a $600,000 settlement. Not only does that indicate the case had merit, it is important to remember that the county will seek indemnification from CPMG based on current pending litigation. This case was important to the legal system because it shed light on the county's suicide epidemic and resulted in systematic program changes. In addition, the exposure from this case required the county to take a hard look at its mental health services. Once it did, the county was forced to address Defendant Brantman's conduct, as well as other CPMG providers' conduct that caused preventable suicides. [Dkt. # 119-1, pg. 19.] After an internal review, CPMG was fired within two months of filing this lawsuit, in November of 2016. The county contracted with another agency in 2017 and reported **zero suicides**. The *Tubbs* court also considered the chilling effect on civil rights litigants knowing they could be hit with costs despite prevailing overall.

/ / /

Defendant Brantman argues the case against her did not present close or difficult issues because Deputy Johnson testified that Nurse Brantman advocated for Nishimoto to go to "medical observation or a detox cell."[1]  [Dkt. # 172, 5:14-21.]  That is correct.  Deputy Johnson testified that Defendant Brantman was _only_ concerned about Nishimoto _detoxing_.  Deputy Johnson unequivocally testified that Defendant Brantman never communicated to Vicky Felizardo or himself that Nishimoto was a suicide risk.  (Exh. 7, 153:16-24.)  Accordingly, there is not one witness that testified Defendant Brantman appreciated Nishimoto's risk of suicide and ordered suicide precautions. Nor can her testimony be reconciled with her own contemporaneous evaluation note.  Though the Court's ruling is clear, Plaintiff contend this was still a close call. Further, as mentioned above, Plaintiff's negligence claims were dismissed because Plaintiff's expert forgot to sign his report.  Had he signed his report, Plaintiff would have the necessary evidence to proceed to trial.

There is no dispute that Rochelle would be considered indigent and of limited resources had she not settled with the county.  She lives in an old airstream on her son's property; and has no other means of surviving other than social security benefits.  However, Defendant Brantman would have this Court strip away the very money Rochelle received for her son's preventable death to pay for what Defendant Brantman claims is a meritless case.  That is nonsensical and a violation of pure decency.  Furthermore, after cost and fees Rochelle took home less than $300,000.  Together, Defendants request $42,000 in costs.  The very fact that an otherwise indigent Rochelle would have to use the very funds she received for her son's preventable suicide is the definition of chilling effect.

Lastly, this Court should not be persuaded by Defendant Brantman's argument that there is no financial disparity.  Defendant Brantman was hired in her

---

[1] MOB and detox cells are not suicide proof.  (Pena Decl., ¶ 3.)

capacity as a medical provider.  As such, her insurance carrier is responsible for any attorney's fees, not Defendant Brantman.  It is disingenuous to argue there is no disparity between the parties.  Furthermore, Defendant Brantman is a young professional with several working years in front of her.

## IV.

## CPMG DID NOT OPPOSE PLAINTIFF'S MOTION AND WAIVED COSTS IN EXCHANGE FOR DISMISSAL ON DIRECT LIABILITY CLAIMS

CPMG did not object to Plaintiff's request to re-tax costs to zero.  Pursuant to Local Rule 7.1.f.3.c., Plaintiff requests this Court consider CPMG's failure to respond as consent to Plaintiff's motion.  If this Court is compelled to consider otherwise, Plaintiff points to the arguments above.  If this Court is not persuaded by the analysis above and gives no weight to CPMG's failure to oppose, Plaintiff requests this Court reduce any costs awarded to CPMG by 50% pursuant to its agreement to waive costs in exchange for a dismissal of claims 1 and 4.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

REPLY ISO MOTION TO RE-TAX COSTS                    CASE NO.  16-cv-1974 BEN LL

# V.

## CONCLUSION

This case fits within the parameters of precedent denying prevailing defendants costs.  This case was important, and most likely saved multiple lives. Rochelle pursued every claim in earnest.  This case did not lack merit merely because Mr. Morris believed Defendant Brantman.  Plaintiff did not believe her, involved parties did not believe her, and the evidence did not corroborate her story. Accordingly, Defendant Brantman's reliance on Mr. Morris' emails should be given little to no weight.  The other factors also weigh in favor of Rochelle. As such, requiring an overall successful litigant, who would otherwise be indigent, to bay $42,000 in costs would create a chilling effect for future civil rights litigants.

Respectfully submitted,

**MORRIS LAW FIRM, APC**

Dated: May 23, 2019                     *s/ Danielle R. Pena*
                                                   Danielle R. Pena, Esq.
                                                   dpena@morrislawfirmapc.com
                                                   Christopher S. Morris, Esq.
                                                   cmorris@morrislawfirmapc.com
                                                   Attorneys for Plaintiff
                                                   ROCHELLE NISHIMOTO, Individually,
                                                   and as Successor in Interest to JASON
                                                   NISHIMOTO

8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INDEX OF EXHIBITS TO REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO RE-TAX COSTS

| Exhibit | Description | Pages |
|---|---|---|
| 7 | Pertinent Portions of the Deposition of Deputy Duane Johnson | 10-14 |

REPLY ISO MOTION TO RE-TAX COSTS                    CASE NO.  16-cv-1974 BEN LL

# EXHIBIT 7

Deposition of Deputy Duane Johnson                    NISHIMOTO, et al. vs. COUNTY OF SAN DIEGO, et al.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ROCHELLE NISHIMOTO, individually )
and as Successor in Interest to )
JASON NISHIMOTO,                )    **REPORTER CERTIFIED**
                                )    **TRANSCRIPT**
          Plaintiffs,           )
                                )
     vs.                        )  16-CV-1974-BEN JMA
                                )
COUNTY OF SAN DIEGO; and        )
                                )
DOES 1-100, inclusive,          )
                                )
          Defendants.           )
_____ )


PORTIONS CONFIDENTIAL


DEPOSITION OF DEPUTY DUANE JOHNSON

(PAGES 1 THROUGH 268, INCLUSIVE)

SEPTEMBER 20, 2018


Reported by:  Mark R. Dahlberg, CSR No. 8487

1  He said he doesn't really remember what they talked

2  about, other than what he testified to.

3  BY MR. MORRIS:

4      Q.  Hey, don't put words in his mouth.  He said he

5  was there.

6          Did you hear her discussing that she was afraid

7  he would be detoxing?

8          MR. KISH:  Did you hear those words?

9          THE WITNESS:  I didn't hear anything about

10 detoxing, I just remember them talking about vital signs.

11 BY MR. MORRIS:

12     Q.  Did you hear Nurse Brantman say anything

13 about -- that he would be suffering withdrawal symptoms,

14 withdrawal complications from taking so much pills?

15     A.  I heard that part, yes.

16     Q.  Did Nurse Brantman ever communicate to Nurse

17 Felizardo that Jason Nishimoto was also, in addition to

18 suffering -- potentially suffering from withdrawal

19 symptoms, was a suicide risk?

20     A.  No.

21     Q.  Did Nurse Brantman ever tell you that she

22 appreciated the suicide risk associated with Jason at any

23 time?

24     A.  No.

25     Q.  Okay.  And how did Nurse Felizardo react to

```
 1    STATE OF CALIFORNIA   )

 2                          )

 3    COUNTY OF SAN DIEGO   )

 4

 5

 6            I, DEPUTY DUANE JOHNSON, hereby certify under

 7    penalty of perjury under the laws of the State of

 8    California that the foregoing is true and correct.

 9            Executed this      day of                    ,

10    2018, at                , California.

11

12

13

14            _____

15                    DEPUTY DUANE JOHNSON

16

17

18

19

20

21

22

23

24

25
```

```
 1              DEPOSITION OFFICER'S CERTIFICATE

 2

 3        I, Mark R. Dahlberg, Certified Court Reporter, No.

 4   8487 in and for the State of California, do hereby

 5   certify:

 6        That, prior to being examined, the witness named in

 7   the foregoing deposition, to wit, DEPUTY DUANE JOHNSON,

 8   was by me duly sworn to testify the truth, the whole

 9   truth, and nothing but the truth;

10        That said deposition was taken down by me in

11   shorthand at the time and place therein named, and

12   thereafter reduced to typewriting under my direction, and

13   the same is a true, correct and complete transcript of

14   said proceedings.

15        I further certify that I am not interested in the

16   event of the action.

17        The dismantling, unsealing, or unbinding of the

18   original transcript will render the reporter's

19   certificate null and void.

20        WITNESS MY HAND this 2nd day of October, 2018

21

22

23              MARK R. DAHLBERG, CSR NO. 8487

24              Certified Shorthand Reporter

25              for the State of California
```